**AFFIRM in Part, REVERSE in Part, and REMAND; Opinion Filed July 31, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01597-CV

**CARL "STACEY" NEESE, INDIVIDUALLY AND AS NEXT FRIEND OF L.N., C.N., L.N., AND C.N., JAMES NEESE, DAVID NEESE, JENNIFER HUGHES, MITZI RENFROE, AND IRL HOOPER, Appellants**

**V.**

**TED B. LYON, JR., MARQUETTE W. WOLF, TED B. LYON & ASSOCIATES, P.C., AND WILLIAM HEIDELBERG, Appellees**

**On Appeal from the 382nd Judicial District Court**
**Rockwall County, Texas**
**Trial Court Cause No. 1-13-61**

## OPINION

Before Justices Lang and Brown[1]
Opinion by Justice Brown

Appellants sued appellees on several theories of liability including barratry. The trial court granted a take-nothing summary judgment in favor of appellees. Appellants raise thirteen issues on appeal. We affirm the trial court's judgment in part, reverse it in part, and remand for further proceedings consistent with this opinion.

---

[1] The Honorable Kerry P. FitzGerald, Retired Justice, was a member of the panel at the time this case was submitted, but he retired from the Court on December 31, 2014, and did not participate in the issuance of this opinion. *See* TEX. R. APP. P. 41.1(a), (b).

# I. BACKGROUND

## A. Factual allegations

Appellants alleged the following facts, which appellees assumed to be true solely for purposes of their summary-judgment motion. A natural-gas pipeline exploded in Johnson County, Texas, on June 7, 2010. The explosion seriously injured appellants Carl "Stacey" Neese[2] and Irl Hooper. It also killed Neese's brother James Robert Neese. Appellant Mitzi Renfroe is James Robert Neese's mother, and the remaining appellants are James Robert Neese's children. We sometimes collectively refer to appellants as the "Clients."

Appellees Ted B. Lyon Jr. and Marquette W. Wolf are Texas lawyers. Lyon is the president and director of appellee Ted B. Lyon & Associates, P.C., and Wolf works for that law firm. Appellee William Heidelberg is a private investigator.

Although Lyon, Wolf, and the Lyon law firm had no prior relationship with the Neeses, they hired Heidelberg to solicit the Neese family to hire Lyon and his firm as their attorneys. Heidelberg traveled to Oklahoma and contacted Neese. He falsely told Neese that he was investigating the pipeline explosion for an organization called the Danielle Smalley Foundation and that he was not associated with any law firm. Heidelberg also told Neese that he should consider hiring Lyon, who had previously obtained a verdict of several hundred million dollars for a victim of a different pipeline explosion. On June 25, 2010, Lyon and Wolf flew to Tulsa and met with Neese and other Neese family members. The Neeses hired the Lyon firm to represent them in any pipeline-explosion litigation for a 40% contingency fee.

Heidelberg asked Neese if he knew anyone else who was injured in the explosion, and Neese referred him to Hooper. Heidelberg met with Hooper in the hospital and was introduced

---

[2] We will sometimes refer to appellant Carl "Stacey" Neese in this opinion simply as "Neese." We will use full names when referring to other individual members of the Neese family.

to Hooper as an investigator for the Danielle Smalley Foundation. According to Hooper's summary-judgment affidavit, Neese told Hooper that Heidelberg was not associated with any law firm. Heidelberg did not deny these statements, and he told Hooper that he should consider hiring Lyon, again because of Lyon's prior success. Another lawyer with the Lyon law firm later flew to Oklahoma and got Hooper to hire the Lyon law firm on a 40% contingency-fee basis. Hooper's affidavit indicates this meeting took place on or after July 5, 2010. Heidelberg was paid a $50,000 bonus by the other appellees for successfully soliciting the Neeses and Hooper.

Lyon, Wolf, and the Lyon law firm filed a lawsuit for the Neeses and Hooper. That lawsuit eventually settled. The Clients paid attorneys' fees and expenses to the Lyon appellees. The Clients later learned of Heidelberg's relationship with the Lyon appellees.

## B. Procedural history

The Clients sued appellees, asserting the following claims and requesting the following remedies in their fifth amended petition: (1) barratry and fee forfeiture, (2) breach of fiduciary duty, (3) fraud by nondisclosure, omission, or concealment, (4) rescission, (5) unjust enrichment, (6) legal malpractice, (7) conspiracy, (8) violations of the Texas Deceptive Trade Practices Act, (9) suspension from the practice of law and revocation of license, and (10) an accounting. Appellees then filed a second amended summary-judgment motion, which was expressly a "traditional" motion under Rule 166a(c). The Clients timely responded and also timely filed a sixth amended petition in which they added a claim for "money had and received and/or quantum valebant." Appellees addressed the new claim in a "supplement" to their second amended motion for summary judgment, and the Clients filed a special exception and response to the supplement.

After a hearing, the trial judge signed a take-nothing summary judgment in favor of appellees. The Clients timely perfected this appeal.

## II. STANDARD OF REVIEW

We review a traditional summary judgment under a de novo standard of review. *Smith v. Deneve*, 285 S.W.3d 904, 909 (Tex. App.—Dallas 2009, no pet.). When we review a traditional summary judgment for a defendant, we determine whether the defendant conclusively disproved an element of the plaintiff's claim or conclusively proved every element of an affirmative defense. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997). We must take evidence favorable to the nonmovant as true, and we must indulge every reasonable inference and resolve every doubt in the nonmovant's favor. *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 800 (Tex. 1994). A matter is conclusively established if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *In re Estate of Hendler*, 316 S.W.3d 703, 707 (Tex. App.—Dallas 2010, no pet.).

Although appellees attached some evidence to their summary-judgment motion, such as the fee agreements and some evidence regarding the course of the underlying pipeline-explosion litigation, they relied principally on the averments in appellants' live petition, the truth of which appellees accepted solely for purposes of summary judgment. Although pleadings generally do not constitute summary-judgment evidence, a summary-judgment movant may rely on judicial admissions in the nonmovant's live pleading. *See Commercial Structures & Interiors, Inc. v. Liberty Educ. Ministries, Inc.*, 192 S.W.3d 827, 835 (Tex. App.—Fort Worth 2006, no pet.) ("[I]f a plaintiff's pleadings contain judicial admissions negating a cause of action, summary judgment may properly be granted on the basis of the pleadings."); *see also Tex. Dep't of Corr. v. Herring*, 513 S.W.2d 6, 9 (Tex. 1974) ("It is recognized that a party may plead himself out of court; *e.g.*, the plaintiff may plead facts which affirmatively negate his cause of action."). When we review a summary judgment against a plaintiff based on the pleadings, we view the facts in

–4–

the pleadings in the light most favorable to the plaintiff. *Murphy v. Gruber*, 241 S.W.3d 689, 691 n.2 (Tex. App.—Dallas 2007, pet. denied).

The Clients attached evidence to their summary-judgment response, principally affidavits by Neese, Hooper, and an attorney who worked for the Lyon law firm from 2007 until 2012. These affidavits largely repeat and elaborate on the facts pleaded in the Clients' sixth amended petition.

### III. ANALYSIS

The Clients raise thirteen issues on appeal. The first issue is a general averment, without substantive argument, that the trial court erroneously granted summary judgment. Issues two and three concern their barratry claims. Issues four through thirteen concern their other liability theories and requested remedies. We proceed directly to their second and third issues.

### A. Barratry

#### 1. Summary-judgment grounds and the Clients' arguments on appeal

Under the heading "Barratrous Conduct and fee forfeiture," the Clients alleged that appellees committed barratry in violation of the Texas Penal Code and the Texas Disciplinary Rules of Professional Conduct. They further asserted that appellees' barratry entitled the Clients to avoid their contingency-fee agreements and to recover all fees and expenses paid to appellees under the agreements.

Appellees raised several summary-judgment grounds regarding the Clients' barratry claims. They argued that Texas law did not recognize a private civil cause of action for barratry until the Texas Legislature statutorily recognized that cause of action effective September 1, 2011. They further argued that, under the civil barratry statute in effect in 2010, clients could invoke barratry only defensively as a basis for avoiding an obligation to pay as-yet-unpaid legal fees. Applying the law to the facts, appellees argued that the Clients had no viable barratry claim

because the Clients alleged barratrous acts occurring only in 2010 and all legal fees due under the allegedly barratrous agreements had already been paid. Appellees also argued that the Clients' barratry claims were barred by a two-year statute of limitations and by ratification.

On appeal, the Clients argue that the civil barratry statute in effect before September 1, 2011, created a private cause of action for barratry and that they successfully pleaded a claim under that statute. They also argue that they alleged facts stating a claim for barratry under the version of the statute in effect from September 1, 2011, through August 31, 2013. The Clients also argue that limitations does not bar their barratry claims because the discovery rule delayed accrual of their claims and because the applicable statute of limitations is four years rather than two. Finally, they argue that they did not ratify the alleged barratry because they were not aware of it until after the underlying case had settled.

### 2. Applicable law

The ordinary meaning of barratry is vexatious incitement to litigation, especially by soliciting potential legal clients. *See Barratry*, BLACK'S LAW DICTIONARY (10th ed. 2014). It has long been a crime in Texas. *See Ackerman v. State*, 61 S.W.2d 116 (Tex. Crim. App. 1933) (affirming barratry conviction). The criminal prohibition of barratry is now found in Chapter 38 of the Texas Penal Code. *See* TEX. PENAL CODE ANN. § 38.12 (West Supp. 2014) (entitled "Barratry and Solicitation of Professional Employment"). The rules of professional conduct also address barratry. *See* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 7.03 (entitled "Prohibited Solicitations and Payments"), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (West 2013).

In 1989, the legislature enacted a new statute, § 82.065 of the Texas Government Code, addressing contingent-fee contracts and barratry:

> (a)  A contingent fee contract for legal services must be in writing and signed by the attorney and client.

–6–

(b)  A contingent fee contract for legal services is voidable by the client if it is procured as a result of conduct violating the laws of this state or the Disciplinary Rules of the State Bar of Texas regarding barratry by attorneys or other persons.

Act of May 27, 1989, 71st Leg., R.S., ch. 866, § 3, 1989 Tex. Gen. Laws 3855, 3857 (amended 2011 and 2013) (current version at TEX. GOV'T CODE ANN. § 82.065 (West Supp. 2014)).

In 2011, the legislature amended § 82.065 and enacted § 82.0651. The 2011 amendments to § 82.065 are not relevant to this appeal. New § 82.0651 contained the following provisions:

(a)  A client may bring an action to void a contract for legal services that was procured as a result of conduct violating the laws of this state or the Texas Disciplinary Rules of Professional Conduct of the State Bar of Texas regarding barratry by attorneys or other persons.

(b)  A client who prevails in an action under Subsection (a) shall recover from any person who committed barratry:

(1) all fees and expenses paid to that person under the contract;

(2) the balance of any fees and expenses paid to any other person under the contract, after deducting fees and expenses awarded based on a quantum meruit theory as provided by Section 82.065(c);

(3) actual damages caused by the prohibited conduct; and

(4) reasonable and necessary attorney's fees.

. . . .

(e)  This section shall be liberally construed and applied to promote its underlying purposes, which are to protect those in need of legal services against unethical, unlawful solicitation and to provide efficient and economical procedures to secure that protection.

(f)  The provisions of this subchapter are not exclusive. The remedies provided in this subchapter are in addition to any other procedures or remedies provided by any other law, except that a person may not recover damages and penalties under both this subchapter and another law for the same act or practice.

Act of May 5, 2011, 82d Leg., R.S., ch. 94, § 2, 2011 Tex. Sess. Law Serv. 535, 535–36 (amended 2013) (current version at TEX. GOV'T CODE ANN. § 82.0651 (West Supp. 2014)).[3]

Section 82.0651, as adopted in 2011, and the 2011 amendments to § 82.065 do not apply to events occurring before September 1, 2011. Act of May 5, 2011, 82d Leg., R.S., ch. 94, § 3, 2011 Tex. Sess. Law Serv. 535, 536.

### 3. Application of original § 82.065(b) to the facts

#### a. Background

In their second issue, the Clients argue that original § 82.065(b) allows them to avoid their fee agreements and recover the consideration appellees received under them. Appellees respond that original § 82.065(b) does not create a cause of action allowing barratry victims to sue for legal fees and expenses paid after the legal services have been fully or substantially performed. The proper interpretation of original § 82.065(b) appears to be a question of first impression for this Court.

Our objective in construing a statute is to effectuate the legislature's intent. We look first to the statutory words' plain and common meaning. *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003). If the statute is unambiguous, we enforce it according to its plain meaning, unless doing so would produce an absurd result. *In re Curry*, 407 S.W.3d 376, 379 (Tex. App.—Dallas 2013, orig. proceeding). We read the statute as a whole and interpret it to give effect to every part. *City of San Antonio*, 111 S.W.3d at 25.

We may also consider, among other things, the circumstances under which the statute was enacted, the common law, former statutory provisions, and laws on the same or similar subjects. TEX. GOV'T CODE ANN. § 311.023(2), (4) (West 2013). We may thus consider that barratry has long been a crime in Texas and that barratry is also proscribed by the ethical rules

---

[3] The legislature amended § 82.0651 in 2013, but those amendments have no effect on this case.

applicable to attorneys. *See* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 7.03. We have found no authority that Texas recognized a private cause of action for barratry in favor of an improperly solicited client before the adoption of original § 82.065 in 1989. *See Moiel v. Sandlin*, 571 S.W.2d 567, 571 (Tex. Civ. App.—Corpus Christi 1978, no writ) ("The offense of barratry as defined in the penal code is a public remedy and not a private one."); *cf. Pelton v. McClaren Rubber Co.*, 120 S.W.2d 516, 517 (Tex. Civ. App.—Waco 1938, writ ref'd) (allowing assertion of barratry as a defense and holding that claim-collector's contract secured by illegal solicitation was "void and unenforceable"). *See generally Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 948 F. Supp. 2d 538, 568–69 (D. Md. 2013) ("[M]ost courts that have examined that issue . . . have concluded that a private cause of action for barratry cannot be implied from a criminal statute.").

Original § 82.065(b) states only one civil consequence for barratry—a contingent-fee contract procured by barratry "is voidable by the client." With respect to contracts, "voidable" means that a contract is valid and effective unless and until the party entitled to avoid it takes steps to disaffirm it. *See Cole v. McWillie*, No. 11-12-00265-CV, 2015 WL 3485269, at *2 (Tex. App.—Eastland May 29, 2015, no pet. h.) ("[A] voidable contract continues in effect until active steps are taken to disaffirm the contract . . . ."); *Mason v. Abel*, 215 S.W.2d 377, 381–82 (Tex. Civ. App.—Dallas 1948, writ ref'd n.r.e.) (contract voidable under statute of frauds is valid unless avoided by a party); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 7 (AM. LAW INST. 1981) ("A voidable contract is one where one or more parties have the power, by a manifestation of election to do so, to avoid the legal relations created by the contract, or by ratification of the contract to extinguish the power of avoidance.").

Grounds that can make a contract voidable include fraudulent inducement, mistake, duress, and breach by the other party. *Lee v. Rosen, Newey & Von Blon, P.C.*, No. 14-00-00759-

CV, 2002 WL 1953791, at *3 (Tex. App.—Houston [14th Dist.] Aug. 22, 2002, pet. denied) (mem. op., not designated for publication); *see also Wilhite v. Davis*, 298 S.W.2d 928, 932 (Tex. Civ. App.—Dallas 1957, no writ) (deed by insane person is voidable). By enacting original § 82.065(b), the legislature added barratry as a reason that makes a contract voidable.

### b.    Original § 82.065(b) is not purely defensive

We agree with the Clients that original § 82.065(b) is not purely defensive but also entitles a client to sue to avoid a barratrous contingency-fee agreement. By saying that the contract is voidable "by the client," the legislature plainly meant that the client may act to have the contract voided. That is, the client may sue to have a court declare the contract voided and canceled. Nothing in the statute restricts this plain meaning. *Cf. In re Myers*, No. 07-06-0050-CV, 2006 WL 305033, at *2 (Tex. App.—Amarillo Feb. 9, 2006, orig. proceeding) (noting that rescission can be asserted either defensively or offensively).

By providing that barratrous contracts are voidable by the client, the legislature plainly intended that an affected client can act to cancel the agreement if necessary. We conclude that in cases brought under original § 82.065(b), the client may sue to avoid a barratrous contingency-fee agreement.

### c.    Original § 82.065(b) also authorizes the remedy of rescission and restitution.

The next question is whether the Clients are entitled to a monetary remedy under original § 82.065(b). Weighing against the Clients is the fact that the legislature did not expressly mention such a remedy in the statute. That fact contrasts with the legislature's approach in other contexts. For example, the Texas Deceptive Trade Practices Act (DTPA) expressly allows a prevailing consumer to obtain orders restoring consideration acquired in violation of the DTPA. *See* Tex. Bus. & Com. Code Ann. § 17.50(b)(3) (West 2011). Likewise, the Texas Property Code permits certain purchasers "to cancel and rescind" executory contracts and recover a "full

–10–

refund" of amounts paid under certain circumstances. *E.g.*, TEX. PROP. CODE ANN. §§ 5.069(d)(2), 5.070(b)(2) (West 2014).

Moreover, the San Antonio Court of Appeals has opined that § 82.065(b) does not allow a plaintiff to avoid a barratrous contingency-fee agreement after the attorney has performed his legal services. *See In re Estate of Arizola*, 401 S.W.3d 664 (Tex. App.—San Antonio 2013, pet. denied).[4] After a traffic accident left three people dead and one person severely injured, a probate court approved the employment of certain attorneys by the administrator for the estate of one of the decedents. *Id*. at 667. That decedent's father, who was not the administrator, later moved to set aside the contingent-fee agreement based on barratry. *Id*. at 668–69. The probate court denied that motion, and the movant appealed. The court of appeals rejected the father's argument for three reasons: (1) it was inadequately briefed, (2) the father was not the client, and (3) the attorneys had fully performed the contingent-fee agreement before the movant filed his motion to set aside. *Id*. at 671–72. On the last point, the court of appeals explained as follows:

> The client may void a contingent fee contract that violates section 82.065 by expressing his intent to do so before the attorney has fully or substantially performed. . . . After the attorney has fully performed the contract, however, the client is estopped from voiding the contract.

*Id*. Although the *Estate of Arizola* case supports appellees' position, it does so without analyzing § 82.065(b)'s language. Moreover, that court's discussion of § 82.065(b) follows its holding that the father waived the issue by failing to brief it. *Id*. at 671. Accordingly, *Arizola*'s persuasive value is limited.[5]

---

[4] Although the court cited the version of § 82.065(b) in effect from 2011 to 2013, 401 S.W.3d at 671, the court's statement of the facts makes it appear that any barratry must have occurred in or before 2010, so the original version of § 82.065(b) should have applied. The 2011 amendments to § 82.065(b), however, merely expanded that provision's scope to encompass all contracts for legal services, rather than only contingency-fee contracts, and so those amendments did not affect the court's analysis.

[5] The other decisions about § 82.065 that we have found—most of which involve the statute of frauds found in § 82.065(a) rather than § 82.065(b)—are not instructive. *See Cobb v. Stern, Miller & Higdon*, 305 S.W.3d 36, 43 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (client successfully rescinded barratrous contract under § 82.065(b) a month after signing it, thereby negating client's personal-jurisdiction contacts with Texas); *see also Tillery & Tillery v. Zurich Ins. Co.*, 54 S.W.3d 356, 359 (Tex. App.—Dallas 2001, pet. denied) (client successfully rescinded contingent-fee contract that did not satisfy § 82.065(a)); *Sanes v. Clark*, 25 S.W.3d 800, 804–05 (Tex. App.—Waco 2000, pet. denied) (client successfully rescinded contingent-fee contract that did not satisfy § 82.065(a)); *Enochs v. Brown*, 872 S.W.2d 312, 316–19 (Tex. App.—Austin

–11–

On the other hand, rescission and restitution is a well-established remedy when a party sets aside a voidable contract.[6] *See Gentry v. Squires Constr., Inc.*, 188 S.W.3d 396, 410 (Tex. App.—Dallas 2006, no pet.) ("Rescission is an equitable remedy that operates to extinguish a contract that is legally valid but must be set aside due to fraud, mistake, or for some other reason to avoid unjust enrichment."); *Lowrey v. Univ. of Tex. Med. Branch at Galveston*, 837 S.W.2d 171, 174 (Tex. App.—El Paso 1992, writ denied) (same); *see also Holt v. Robertson*, No. 07-06-0220-CV, 2008 WL 2130420, at *5 (Tex. App.—Amarillo May 21, 2008, pet. denied) (mem. op.) ("After performance of the contract, the transaction remains voidable, and rescission remains a viable option, so long as the status quo of the parties prior to entry of the contract can be restored."); *Neill v. Pure Oil Co.*, 101 S.W.2d 402, 404 (Tex. Civ. App.—Dallas 1937, writ ref'd) (voidable deed is effective "until set aside in a suit for rescission or cancellation"). That is, a suit to set aside a contract is one for rescission and cancellation of the contract. *See Lowrey*, 837 S.W.2d at 174 (citing *Bullock v. Tex. Emp'rs Ins. Ass'n*, 254 S.W.2d 554, 556 (Tex. Civ. App.—Dallas 1952, writ ref'd); *Tex. Emp'rs Ins. Ass'n v. Kennedy*, 143 S.W.2d 583, 585–86 (Tex. 1940)).

"[W]e presume that the Legislature acted with knowledge of the common law and court decisions." *Phillips v. Beaber*, 995 S.W.2d 655, 658 (Tex. 1999). Moreover, we interpret a statute to abrogate common-law principles only when the statute's express terms or necessary implications clearly indicate such an intent by the legislature. *Bruce v. Jim Walters Homes, Inc.*, 943 S.W.2d 121, 122–23 (Tex. App.—San Antonio 1997, writ denied). Because rescission and restitution is an established common-law remedy for a voidable contract, we conclude that the

---

1994, no writ) (client could not rescind fully performed contingent-fee contract that did not fully satisfy § 82.065(a)), *disapproved in part on other grounds by Roberts v. Williamson*, 111 S.W.3d 113, 120 (Tex. 2003).

[6] As previously noted, a voidable contract is one that is valid and enforceable unless and until a party entitled to avoid it, for reasons such as fraud, mistake, or lack of mental capacity, takes steps to disaffirm it. *See Cole*, 2015 WL 3485269, at *2; *see also* Part III.D, *infra*, for additional discussion of rescission and restitution.

legislature intended for that remedy to be available when it made barratrous contingency-fee contracts voidable under original § 82.065(b).

The next question is whether appellees' full performance of the fee agreements bars the Clients' claims for rescission under original § 82.065(b), as the court held in *Estate of Arizola*. In answering this question, we find guidance in two recent Texas Supreme Court cases, *Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817 (Tex. 2012), and *Morton v. Nguyen*, 412 S.W.3d 506 (Tex. 2013). In both cases, the supreme court interpreted statutes that make rescission-like remedies available, and the court relied heavily on common-law rescission and restitution as explained in the *Restatement (Third) of Restitution and Unjust Enrichment*. These cases help us conclude that appellees' full performance of the fee agreements does not bar the Clients' claims for rescission under original § 82.065(b).

In *Cruz*, a contractor sued a homeowner, Cruz, for breach of contract, and Cruz counterclaimed under the DTPA. 364 S.W.3d at 821. Although Cruz obtained a partial summary judgment on DTPA liability, the jury returned a zero damages finding. *Id*. The court of appeals and supreme court affirmed the resulting judgment awarding Cruz nothing on his DTPA claim. A principal question on appeal was whether Cruz was entitled to the DTPA remedy of restoration of the consideration that had been paid to the contractor. *Id*. at 824–27. To answer this question, the supreme court turned to the common law of rescission and restitution. *See id*. The supreme court observed that under the common law, a rescission claimant generally must return the parties to the status quo ante by returning whatever the claimant has received from the defendant—what the court called "counter-restitution." *Id*. at 825–26. However, a defendant's wrongdoing may excuse the claimant from this obligation when counter-restitution is not feasible. *Id*. at 826. The supreme court concluded these principles apply to the DTPA remedy of restoration of consideration, but the claimant need not

make or tender counter-restitution as a prerequisite to relief as long as the award to the claimant can be reduced accordingly. *Id*. at 826–27. Because Cruz had not deducted the value he received from the contractor, or proved how much he rather than his insurer had paid the contractor, the court held that Cruz had failed to prove conclusively that he was entitled to the sum he claimed as restoration of consideration under the DTPA. *Id*. at 827.

*Morton* involved a property code provision giving certain real estate buyers the right to cancel the contract and receive a full refund of payments made. 412 S.W.3d at 507–08. The question presented was whether the buyer seeking such a remedy is obliged to make counter-restitution for the value of his occupation of the property. *See id*. at 510. Relying on *Cruz* and the *Restatement*, the supreme court held that a prevailing buyer must make such counter-restitution. *Id*. at 510–12.

To summarize, then, rescission is generally limited to cases in which counter-restitution by the claimant—that is, the return to the defendant of whatever the claimant received in the transaction—will restore the defendant to the status quo ante. *See Cruz*, 364 S.W.3d at 825–26 (relying on RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 54 (AM. LAW INST. 2011)). However, as stated in *Cruz*, "rescission is not a one-way street. It requires a mutual restoration and accounting, in which each party restores property received from the other." *Id*. at 825.

Cases show that counter-restitution can be effectuated in various ways, even after full performance of a contract. This is exemplified by *Sudderth v. Howard*, 560 S.W.2d 511 (Tex. Civ. App.—Amarillo 1977, writ ref'd n.r.e.). The Sudderths executed documents purporting to sell land to the Howards for $17,400, and they then successfully sued to rescind the deed on the ground that the transaction was in substance a forbidden home-equity loan. *Id*. at 513–14. The trial court's judgment rescinded the deed, but it also awarded the Howards a recovery of $17,400

plus interest. *Id*. at 514. The Sudderths complained on appeal that this recovery was not supported by the pleadings, but the court of civil appeals rejected the argument because the duty to return benefits was inherent in the Sudderths' claim for rescission. *Id*. at 516. The court wrote, "[O]ne seeking cancellation of an instrument cannot repudiate it and retain the benefits received therefrom; he should offer or tender a restoration and the court can accomplish that result by its judgment. . . . By its judgment rendered here, the court did so." *Id*. (citation omitted).

Thus, having reviewed the common law of rescission, we find no absolute rule that a defendant's full performance of a contract, without more, is a defense to an otherwise proper claim for avoidance and rescission of a contract. *See Holt*, 2008 WL 2130420, at *5; *see also City of Corpus Christi v. S.S. Smith & Sons Masonry, Inc.*, 736 S.W.2d 247, 251 (Tex. App.— Corpus Christi 1987, writ denied) ("[Rescission] is also not a remedy for a completed contract *in the absence of fraud*." (emphasis added)).

Finally, nothing in § 54 of the new *Restatement*, relied on heavily by the supreme court in *Cruz*, indicates that a defendant's full performance of a voidable contract, without more, defeats a claim for rescission and restitution. *See generally* RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 54 (AM. LAW INST. 2011). Rather, the relevant considerations are whether the claimant can make counter-restitution of benefits received and, if not, whether the defendant's conduct is such that it is appropriate for it to bear an uncompensated loss. *See generally Cruz*, 364 S.W.3d at 826. Here, appellees did not undertake to prove conclusively that it is impossible for the Clients to make acceptable counter-restitution.

For the foregoing reasons, we conclude that original § 82.065(b) authorizes the Clients to sue to avoid contingency-fee agreements procured by barratry and seek the remedy of rescission and restitution. By reaching this conclusion, we disagree with the Clients to the extent they

–15–

contend that original § 82.065(b) entitles them to total fee forfeiture—that is, the automatic recovery of all fees paid to appellees, with no counter-restitution at all—rather than traditional rescission and restitution. As we discuss more fully in Part III.D of this opinion, rescission is not forfeiture. We further conclude that the bare fact that the parties have fully performed an agreement that is voidable under original § 82.065(b) is not a bar to a claim for rescission and restitution.[7] To the extent it concludes to the contrary, we disagree with *In re Estate of Arizola*, 401 S.W.3d 664 (Tex. App.—San Antonio 2013, pet. denied).

### (1) Harmonizing original § 82.065(b) with subsequent enactments

We disagree with appellees' suggestion that construing original § 82.065(b) to authorize rescission renders the legislature's 2011 adoption of § 82.0651(a) a superfluous act. Unlike original § 82.065(b), § 82.0651(a) expressly authorizes clients to recover not only fees and expenses paid under a barratrous contract to any person who committed barratry, but also actual damages caused by the barratry and reasonable and necessary attorneys' fees incurred in prosecuting the barratry action. Act of May 5, 2011, 82d Leg., R.S., ch. 94, § 2, 2011 Tex. Sess. Law Serv. 535, 535–36 (amended 2013) (current version at TEX. GOV'T CODE ANN. § 82.0651 (West Supp. 2014)). Moreover, § 82.0651(b)(1) and amended § 82.065(b) together clarify quantum-meruit protection for innocent lawyers working on the case.

By adding new remedies such as actual damages and attorneys' fees, the legislature changed existing law when it adopted § 82.0651. Accordingly, our interpretation of original § 82.065(b) does not make the adoption of § 82.0651 a meaningless act.

---

[7] But performance with full knowledge of the facts making an agreement voidable can demonstrate ratification of a voidable agreement under some circumstances. We discuss ratification in Part III.C, *infra*.

We also reject appellees' reliance on certain legislative history regarding the 2011 amendments. A bill analysis of those amendments contained the following statements under the heading "Author's/Sponsor's Statement of Intent":

> Under Section 38.12, Penal Code, "barratry" is generally defined as the illegal solicitation of professional employment. The Texas Disciplinary Rules of Professional Conduct of the State Bar of Texas prohibit these solicitations as well. Adding a civil enforcement option would help curtail this practice.
>
> S.B. 1716 adds a cause of action for a client who has been unlawfully solicited to void the contract and recover any actual damages and any fees and expenses paid.

Sen. Comm. on State Affairs, Bill Analysis, Tex. S.B. 1716, 82d Leg., R.S. (2011). This statement does not reflect any analysis of original § 82.065, which the legislature had adopted over twenty years earlier. One session of the legislature does not have the power to construe the acts or declare the intent of a past session. *Rowan Oil Co. v. Tex. Emp't Comm'n*, 263 S.W.2d 140, 143 (Tex. 1953).

Moreover, the bill analysis speaks conjunctively when it says that the statute "adds a cause of action for a client who has been unlawfully solicited to void the contract and recover any actual damages and any fees and expenses paid." (Emphases added.) That is, § 82.0651 provides a cause of action with additional remedies not available under the prior law. The client's ability to void the barratrous contingent-fee contract was not new, but the remedies of actual damages and attorneys' fees were added to the already-existing cancellation action.

For these reasons, the legislative history relied on by appellees does not support construing original § 82.065(b) to exclude the remedy of rescission and restitution.

We conclude that the Clients pleaded a viable claim under original § 82.065(b) to void the fee agreements and obtain rescission and restitution.

### 4. Affirmative defenses

#### a. Limitations

Appellees argued that any barratry claim the Clients possessed accrued in the summer of 2010 and was barred by the two-year statute of limitations when the Clients sued in 2013. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a) (West Supp. 2014). The Clients, on the other hand, argue that a four-year statute of limitations and the discovery rule apply. We conclude that the four-year statute applies and thus do not reach the discovery-rule issue.

With some exceptions not relevant here, a two-year limitations period applies to suits "for trespass for injury to the estate or to the property of another, conversion of personal property, taking or detaining the personal property of another, personal injury, forcible entry and detainer, and forcible detainer." *Id*. Under the residual statute of limitations, a four-year period applies to "[e]very action for which there is no express limitations period." *Id*. § 16.051 (West 2015).

A statutory claim to avoid and rescind an agreement for barratry does not fall into any of the categories of claims governed by the two-year statute of limitations found in § 16.003(a). Nor is such a claim identified in another statute of limitations. We thus conclude that a claim under original Government Code § 82.065(b) is a claim not covered by another express limitations period, and thus the four-year residual statute of limitations applies to the Clients' claims under original § 82.065(b). *Cf. Lowrey*, 837 S.W.2d at 174 (holding that four-year residual statute of limitations applied to claim for common-law rescission).

Because the applicable limitations period is four years, we conclude that appellees did not conclusively prove that limitations bars the Clients' claims under original § 82.065(b).

#### b. Ratification

Appellees also argued that ratification barred any barratry claim because the Clients approved the underlying settlement. The Clients contend that ratification does not apply because

they did not know of the alleged barratry when they authorized the settlement and fee payment. We agree with the Clients that appellees did not conclusively prove ratification.

Ratification is an affirmative defense. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 344 (Tex. 2011). Its elements are (1) approval by act, word, or conduct, (2) with full knowledge of the facts of the earlier act, and (3) with the intent to validate the earlier act. *White v. Harrison*, 390 S.W.3d 666, 672 (Tex. App.—Dallas 2012, no pet.). "A party ratifies an agreement when—after learning all of the material facts—he confirms or adopts an earlier act that did not then legally bind him and that he could have repudiated." *Id*.

The Clients argue there is no evidence that they had full knowledge of appellees' allegedly wrongful conduct before appellees finished their work on the underlying case, and appellees thus failed to conclusively prove the essential full-knowledge element of their ratification defense. Appellees counter that even if the Clients did not know that Heidelberg was secretly working for the other appellees when he solicited them, the Clients were still "aware of the facts they allege to constitute barratry by the Lawyers." But appellees do not explain what these "facts" were, nor do they provide any record citations showing that the Clients knew appellees had committed barratry even if they did not know about Heidelberg's deceit. At oral argument, appellees explained that the Clients knew that Heidelberg had solicited them on the other appellees' behalf and that this was sufficient knowledge. We disagree.

Ratification requires full knowledge of the facts of the earlier act allegedly ratified. *See id*. Although the Clients obviously knew that Heidelberg had recommended appellees, there is no conclusive proof that they knew any of the additional facts that would make his recommendation a barratrous solicitation, such as Heidelberg's financial interest in soliciting the Clients for the other appellees. Furthermore, for summary-judgment purposes appellees accepted as true the allegations in the Clients' live petition, which state that the Clients "were not

–19–

aware that the Lyon Defendants had solicited their representation and paid Heidelberg to solicit their representation for the Lyon Defendants . . . until shortly before the filing of this lawsuit."

Moreover, there is no evidence that the Clients committed any conduct manifesting approval of the alleged barratry after they learned all the pertinent facts. They instead sued appellees shortly after learning of the alleged barratry.

In sum, appellees did not conclusively prove ratification's "full knowledge" element. We thus conclude that ratification does not support appellees' summary judgment.

### 5. Application of original § 82.0651 to the facts

In their third issue, the Clients argue that original § 82.0651 also supports their barratry claims. Appellees contend that § 82.0651 was enacted after the alleged barratry occurred and thus as a matter of law does not apply. We agree with appellees.

As stated above, § 82.0651(a) was enacted in 2011 and provided as follows from September 1, 2011, through August 31, 2013:

> A client may bring an action to void a contract for legal services that was procured as a result of conduct violating the laws of this state or the Texas Disciplinary Rules of Professional Conduct of the State Bar of Texas regarding barratry by attorneys or other persons.

Act of May 5, 2011, 82d Leg., R.S., ch. 94, § 2, 2011 Tex. Sess. Law Serv. 535, 535–36 (amended 2013) (current version at TEX. GOV'T CODE ANN. § 82.0651 (West Supp. 2014)). Original § 82.0651(b) expressly authorizes a client who prevails in an action under subsection (a) to recover all fees and expenses paid under the barratrous contract to the person who committed barratry, plus other remedies such as actual damages and attorney's fees. *Id*.

Original § 82.0651 does not apply to conduct that occurred before September 1, 2011. *Id*. §§ 3–4, 2011 Tex. Sess. Law Serv. at 536. The Clients nonetheless argue that they have a claim under original § 82.0651 because (1) appellees committed conduct after August 31, 2011 that allegedly violated Texas's barratry laws, or (2) the November 2011 settlement agreements in

–20–

the underlying pipeline-explosion case constituted "contracts for legal services" within the meaning of the original version of § 82.0651(a). We reject both arguments.

First, the Clients argue that they have a viable § 82.0651 claim because they alleged that appellees violated several rules of professional conduct regarding barratry after August 31, 2011:

- appellees continued their employment by the Clients, procured through barratry, in violation of Rule 7.06;

- appellees committed criminal barratry, in violation of Rule 8.04(a)(2);

- appellees committed barratry, in violation of Rule 8.04(a)(9); and

- appellees charged for and collected a fee for professional employment obtained in violation of the barratry rules, in violation of Rule 7.03(d).

But the cause of action created by original § 82.0651 requires a client to prove more than that the defendant violated the laws or disciplinary rules regarding barratry after August 31, 2011. The client must also prove that the lawyer "procured" a legal-services contract due to such conduct. Here, the Clients do not support any of the four alleged rule violations listed above with factual allegations showing that appellees procured a contract for legal services by barratry committed after August 31, 2011. Thus, the Clients' first argument fails.

The Clients argue alternatively that the November 2011 settlement agreements in the underlying case were "contracts for legal services" procured by barratry within the meaning of original § 82.0651(a). The settlement agreements themselves are not in the record. Rather, the Clients filed affidavits by Neese and Hooper stating the following facts:

- the pipeline-explosion case settled at mediation on or about September 20, 2011; and

- on or about November 1, 2011, Neese and Hooper were required to sign documents whereby Lyon, Wolf, and the law firm charged them attorneys' fees and expenses and required them to state that they were satisfied with the results of the distribution of the settlement proceeds, including the payment of attorneys' fees.

This is the only evidence the Clients provided regarding the settlement agreements.

–21–

The question is whether those documents constitute contracts for legal services "procured" by barratry as required by original § 82.0651(a). We conclude they do not. The plain meaning of the statutory term "contract for legal services" is a contract whereby an attorney agrees to provide legal services to a client for a fee or other consideration. *Cf. Contract for services*, BLACK'S LAW DICTIONARY (10th ed. 2014) (defining "contract for services" as "[a] contract for a job undertaken by an independent contractor, as opposed to an employee"). The November 2011 documents, as described by Neese and Hooper, involved no promises by appellees to provide legal services. Rather, they addressed the division of settlement proceeds and the payment of fees and expenses for legal services already performed. As such, the November 2011 documents were not contracts for legal services within the meaning of original § 82.0651(a).

The trial court properly granted summary judgment against the Clients on their barratry claims based on the 2011 version of § 82.0651. We thus reject the Clients' third appellate issue.

We conclude that the trial court erred by granting summary judgment on the Clients' barratry claims based on the original version of Government Code § 82.065. The trial court did not err by granting summary judgment on the Clients' barratry claims based on the original version of § 82.0651.

## B.     Breach of fiduciary duty

In their fourth issue, the Clients urge that the trial court erred by summarily dismissing their fiduciary-duty claims. Appellees obtained summary judgment by arguing that an essential element of these claims was that appellees derived an "improper benefit" from their conduct, and that, as a matter of law, an agreed-upon and earned fee is not an improper benefit.[8]

---

[8] In the part of their summary-judgment motion addressing the Clients' fiduciary-duty claims, appellees included a footnote in which they said, "Mr. Heidelberg is an investigator, not a lawyer. He was not a fiduciary, and Plaintiffs' claim that he breached a fiduciary duty is groundless." Appellees do not repeat this assertion in their appellate brief. We conclude that this footnote, which is devoid of citation to proof,

### 1. Applicable law

"The elements of a breach-of-fiduciary-duty claim are: (1) a fiduciary relationship existed between the plaintiff and defendant; (2) the defendant breached its fiduciary duty to the plaintiff; and (3) the defendant's breach resulted in injury to the plaintiff or benefit to the defendant." *Anderton v. Cawley*, 378 S.W.3d 38, 51 (Tex. App.—Dallas 2012, no pet.). An attorney owes his client a fiduciary duty as a matter of law, but the attorney–client relationship must first exist before a fiduciary duty arises. *See Kiger v. Balestri*, 376 S.W.3d 287, 290 (Tex. App.—Dallas 2012, pet. denied).

In the attorney–client context, a fiduciary-duty claim focuses on whether the attorney's conduct involved his or her integrity and fidelity, and whether the attorney obtained an improper benefit from representing the client. *Gibson v. Ellis*, 126 S.W.3d 324, 330 (Tex. App.—Dallas 2004, no pet.). An attorney thus commits a fiduciary breach when he or she benefits improperly from the attorney–client relationship by, among other things, subordinating his or her client's interests to his or her own, retaining the client's funds, engaging in self-dealing, improperly using client confidences, failing to disclose conflicts of interest, or making misrepresentations to achieve those ends. *Id.* An attorney also owes a client a duty to inform the client of matters material to and within the scope of the representation. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 159–60 (Tex. 2004); *see also Hernandez v. Sovereign Cherokee Nation Tejas*, 343 S.W.3d 162, 175 (Tex. App.—Dallas 2011, pet. denied) (attorney's duty to make a full and accurate confession of all fiduciary activities, transactions, profits, and mistakes).

### 2. Application of the law to the facts

Our first step is to identify which element of the claim appellees attacked. Near the beginning of the relevant section of their motion, appellees stated, "To raise even the possibility

---

was not sufficient to raise an independent ground for summary judgment on Heidelberg's behalf, and we express no opinion about whether Heidelberg was a fiduciary to the Clients. For purposes of this appeal, we assume that he was.

of fee forfeiture, Plaintiffs must first show a breach of fiduciary duty. . . . They cannot. Their fiduciary duty claim fails because Defendants did not receive an improper benefit." The remainder of their argument focused on whether their fee was an improper benefit. We conclude that appellees attacked only the third element, which requires a plaintiff to show either (i) damages to himself or (ii) a benefit to the defendant. We therefore do not address the merits of the second element, which is the element of breach.

The question then is whether appellees conclusively negated the third element of the Clients' fiduciary-duty claims. In this regard, the Clients argue that they are entitled to pursue the remedy of fee forfeiture for appellees' fiduciary breaches under *Burrow v. Arce*, 997 S.W.2d 229 (Tex. 1999).[9] In *Burrow*, the plaintiffs sued their former attorneys for breach of fiduciary duty and other causes of action. *Id*. at 232. Factually, the plaintiffs alleged, among other things, that the defendant attorneys had improperly solicited their business through a "lay intermediary." *Id*. The supreme court held that fee forfeiture was a potential remedy for breach of fiduciary duty, even in the absence of any actual damages to the clients. *Id*. at 240.

Given the posture of the case, we must accept as true the Clients' claims that (i) appellees breached their fiduciary duties by failing to disclose that they had obtained the right to represent the Clients through a deceptive barratry scheme and (ii) appellees benefited from their fiduciary breaches by collecting their fees in the underlying case. If these allegations are true, then under *Burrow* the Clients may be entitled to recover some or all of those fees through fee forfeiture. We thus conclude that appellees did not conclusively negate the third element of the Clients' fiduciary-duty claims.

---

[9] The Clients also observe that appellees did not address whether appellees breached their duty of full disclosure by not disclosing their alleged prior fraud on the Clients. That point, however, addresses the breach element, which appellees did not attack. We accordingly do not discuss the Clients' argument on the breach element.

–24–

Appellees argue that they did not receive an improper benefit because they earned the fees and because the Clients do not complain about the quality of the legal services or the results obtained in the underlying case. For support, they rely on cases holding that legal fees received for negligently rendered legal services, without more, are not an improper benefit that transforms a negligence claim into a fiduciary-duty claim. *See Reneker v. Offill*, No. 3:08-CV-1394-D, 2009 WL 804134, at *10 (N.D. Tex. Mar. 26, 2009); *Vara v. Williams*, No. 03-10-00861-CV, 2013 WL 1315035, at *4 n.4 (Tex. App.—Austin Mar. 28, 2013, no pet.) (mem. op.). This case, however, is distinguishable from *Reneker* and *Vara* because the Clients' fiduciary-duty claims are not founded on negligently provided legal services, but rather on appellees' alleged failure to disclose their own alleged prior misconduct.

The trial court erred by granting summary judgment on the Clients' fiduciary-duty claims. We resolve the Clients' fourth issue in their favor.

## C. Fraud

In their fifth issue, the Clients urge that the trial court erred by granting summary judgment on their fraud claims. Appellees asserted two grounds for summary judgment on those claims: (i) the Clients ratified the alleged fraud and (ii) the Clients have no recoverable damages.[10]

On appeal, the Clients address only the second ground for summary judgment. Because the Clients do not address an independent ground for summary judgment on their fraud claims, we must affirm the judgment as to those claims. *Adams v. First Nat'l Bank of Bells/Savoy*, 154 S.W.3d 859, 875 (Tex. App.—Dallas 2005, no pet.) ("[A] reviewing court will affirm the

---

[10] Appellees ask us to hold that the Clients have waived their fifth, ninth, and eleventh issues because the Clients often cite the evidence attached to their response to appellees' first amended summary-judgment motion rather than the evidence attached to their response to appellees' second amended summary-judgment motion. But the Clients attached essentially the same evidence, including identical affidavits, to both responses, and the Clients' citations to the earlier response have not unduly hampered our ability to find the corresponding evidence attached to the later response. We thus reject appellees' argument that the Clients have waived their issues through deficient briefing.

summary judgment as to a particular claim if an appellant does not present argument challenging all grounds on which the summary judgment could have been granted."). We therefore reject the Clients' fifth issue.

**D.      Rescission**

The Clients pleaded an "[a]lternative claim for rescission," alleging that they were entitled to rescind the contingency-fee agreements as a remedy for appellees' wrongful conduct such as breach of fiduciary duty, barratry, and fraud. Specifically, they sought the return of *all* the fees and expenses appellees received, plus the Clients' attorneys' fees incurred in prosecuting their suit against appellees. Appellees argued that rescission is unavailable to one who retains the benefits of the contract to be rescinded. In their sixth issue, the Clients argue, as they did in their summary-judgment response, that the trial court can, as part of a restitution remedy, determine the value of appellees' services that appellees will retain for providing those services to the Clients. We agree.

"Rescission" is a common shorthand for the composite remedy of rescission and restitution. *Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 825 (Tex. 2012). Rescission is an equitable remedy that operates to extinguish a contract that is legally valid, but must be set aside because of fraud, mistake, or some other reason to avoid unjust enrichment. *Gentry v. Squires Constr., Inc.*, 188 S.W.3d 396, 410 (Tex. App.—Dallas 2006, no pet.).

In *Cruz*, the Texas Supreme Court relied heavily on the *Restatement (Third) of Restitution and Unjust Enrichment* in explaining the law of rescission. 364 S.W.3d at 825–27. The court held that rescission is "generally limited to cases in which counter-restitution by the claimant will restore the defendant to the status quo ante." *Id*. at 826 (citing RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 54(3)). The court also held that a defendant's wrongdoing may factor into whether it should bear an uncompensated loss in

–26–

situations in which the claimant cannot restore the defendant to the status quo ante, but a defendant's wrongdoing does not excuse the claimant from counter-restitution when counter-restitution is feasible. *Id.* (citing RESTATEMENT § 54(3)(b) & cmt. c). Finally, incorporating *Restatement* principles into its interpretation of the rescission remedy available under the DTPA, the court held that a DTPA claimant does not have to make restitution or a tender of restitution to the defendant before seeking the remedy "as long as the affirmative relief to the consumer can be reduced by (or made subject to) the consumer's reciprocal obligation of restitution." *Id.* at 827 (citing RESTATEMENT § 54(5)); *see also Morton v. Nguyen*, 412 S.W.3d 506, 511 (Tex. 2013) (incorporating RESTATEMENT § 54(5) into rescission remedies available under the Property Code); RESTATEMENT § 54 cmt. g ("Rescission is not forfeiture . . . .").

Based on *Cruz* and *Morton*'s reliance on § 54(5), we conclude that Texas's common law of rescission does not require a claimant to make restitution or a tender of restitution as a prerequisite to relief as long as any affirmative relief to the claimant can be reduced by or made subject to the claimant's reciprocal obligation of restitution.

Appellees urge that rescission is unavailable because the Clients are retaining the settlement funds they recovered in the underlying case, making restoration of the status quo ante impossible. The Clients respond that appellees misunderstand the rescission requirement that the claimant not retain the benefits of the transaction. According to the Clients, if they are retaining any benefits for purposes of rescission analysis, those benefits are appellees' services, not the settlement proceeds the Clients have received. We agree with the Clients. For rescission, the claimant generally must return the *defendant* to the status quo ante. *See Cruz*, 364 S.W.3d at 826. We find no authority that a claimant in the Clients' position must return benefits it received from third parties not before the court as a prerequisite for rescission.

The Clients argue that they are excused from restoring benefits to appellees because the Clients' inability to restore them was caused by appellees' own wrongdoing. They alternatively argue that the trial court can effect an equitable restoration of benefits in conjunction with an award of rescission, if the court finds that appellees' services had value.

We conclude that, under *Cruz* and the *Restatement*, a rescission claimant must either (i) make counter-restitution of benefits to the defendant or (ii) show that the defendant's wrongdoing is such that the claimant's inability to make counter-restitution should be excused. *See id.* (citing RESTATEMENT § 54(3)(b) & cmt. c). The *Cruz* court further held that a claimant can make counter-restitution for services received by deducting the value of the services from the ultimate rescission award. *Id.* at 827 (rescission DTPA award was erroneous because there was no deduction for the value the claimant received under the contracts).

On traditional summary judgment, then, appellees had to conclusively prove that the Clients could not make counter-restitution of benefits received from appellees and that appellees' wrongdoing was not sufficient to excuse counter-restitution. Because they did not attempt to prove these matters, appellees did not carry either burden. The trial court thus erred by granting summary judgment that the Clients are not entitled to a rescission remedy, and we resolve the Clients' sixth issue in their favor.

## E. Money had and received

In their seventh issue, the Clients argue that the trial court erred by summarily dismissing their money-had-and-received claims.

### 1. Timeliness of appellees' "supplement"

The Clients added their money-had-and-received claims by amending their pleadings seven days before the summary-judgment hearing. Appellees addressed these new claims in a "supplement" filed five days before the hearing. The Clients filed a special exception and

response in which they complained that they had not received twenty-one days' notice of the hearing as to appellees' supplement. The special exception was discussed at the hearing, and the trial court said that it would hear the supplement. It granted summary judgment on the money-had-and-received claims along with the rest of the Clients' claims.

The Clients argue that this summary judgment was improper because appellees' summary-judgment motion did not address the Clients' money-had-and-received claims and because appellees addressed those claims only in a supplement filed within twenty-one days of the hearing. The Clients preserved their complaint about the timeliness of the supplement via their special exception. *See Luna v. Estate of Rodriguez*, 906 S.W.2d 576, 582 (Tex. App.—Austin 1995, no writ) (nonmovant must object to hearing of summary-judgment motion on less than twenty-one days' notice). But on appeal, the Clients present no argument or authorities that the trial court erred by implicitly overruling their special exception or that they were harmed by the ruling. We thus reject the Clients' inadequate-notice argument. *See* TEX. R. APP. P. 38.1(i) (requiring argument, supported by authorities and record citations); *see also In re Estate of Snow*, No. 12-11-00055-CV, 2012 WL 3793273, at *2–3 (Tex. App.—Tyler Aug. 30, 2012, no pet.) (mem. op.) (affirming trial court's decision to shorten notice of summary-judgment hearing, in part because nonmovants failed to show they were harmed by the ruling).

### 2. Analysis of the merits

The Clients also argue that the trial court erred on the merits. Appellees obtained summary judgment on the Clients' money-had-and-received claims by arguing that the claim is not viable when a contract covers the transaction in question. The Clients argue that their claims are viable because the barratrous fee agreements were void as against public policy.

We disagree with the Clients' position. The law treats void and voidable instruments differently. When a party seeks to recover money paid under a void instrument, its remedy is not

rescission, but a recovery in quantum valebant for money had and received. *Country Cupboard, Inc. v. Texstar Corp.*, 570 S.W.2d 70, 74 (Tex. Civ. App.—Dallas 1978, writ ref'd n.r.e.). If the instrument is voidable rather than void, the party must sue for rescission and cannot sue for money had and received. *Id.* Barratrous contracts were considered void before the adoption of § 82.065(b). *See Pelton v. McClaren Rubber Co.*, 120 S.W.2d 516, 517 (Tex. Civ. App.—Waco 1938, writ ref'd) (claim-collector's contract secured by personal solicitation in violation of criminal statute was "void and unenforceable"). But when it adopted § 82.065(b) in 1989, the legislature plainly declared that barratrous contingency-fee agreements were voidable, and it changed any contrary common-law rule. *See City of Galveston v. State*, 217 S.W.3d 466, 473 (Tex. 2007) ("The Legislature, of course, may change the common law . . . ."). Accordingly, the Clients' allegations, taken as true, show only that the fee agreements were voidable, not void, and do not support a cause of action for money had and received.

For support, the Clients rely on *Quintero v. Jim Walter Homes, Inc.*, 709 S.W.2d 225 (Tex. App.—Corpus Christi 1985, writ ref'd n.r.e.). That case is distinguishable. In *Quintero*, the court held that an aggregate settlement agreement violating the disciplinary rules was void and unenforceable. 709 S.W.2d at 229–30. But there is no indication in *Quintero* that the legislature had adopted a statute declaring aggregate settlement agreements to be voidable, as opposed to void. Here, a statute declares barratrous contingency-fee agreements to be voidable, and we must implement the legislature's intent. Because the barratry alleged by the Clients would make the fee agreements voidable, not void, their claims for money had and received fail as a matter of law.

We therefore reject the Clients' seventh issue.

–30–

**F. Unjust enrichment**

In their eighth issue, the Clients argue that the trial court erred by summarily dismissing their unjust-enrichment claims because the fee agreements are allegedly void as against public policy. But, as we have just held, original § 82.065(b) makes barratrous fee agreements voidable rather than void. We thus reject the Clients' eighth issue on appeal.

**G. Legal malpractice**

In their ninth issue, the Clients argue that the trial court erroneously dismissed their malpractice claims. Appellees argued that (i) the Clients judicially admitted in a prior summary-judgment response that they had no malpractice claim, and (ii) the Clients had no recoverable damages. On appeal, the Clients address only the second ground. Because the Clients do not address an independent ground for summary judgment on their malpractice claims, we must affirm the judgment as to that claim. *See Adams*, 154 S.W.3d at 875.

**H. Conspiracy and accounting**

In their tenth issue, the Clients argue that the trial court erroneously dismissed their civil-conspiracy claims. In their twelfth issue, they argue the trial court erroneously denied their request for an accounting. Appellees argued that the Clients had no viable tort claims to support a derivative conspiracy claim or an accounting remedy. Because we reverse the summary judgment as to barratry and breach of fiduciary duty, we also reverse the summary judgment as to civil conspiracy. *See Porter v. Sw. Christian Coll.*, 428 S.W.3d 377, 384 (Tex. App.—Dallas 2014, no pet.) (reversing summary judgment on civil conspiracy under similar circumstances). And because we reverse the summary judgment as to barratry and rescission, we reverse the summary judgment as to the Clients' request for an accounting. *See Cruz*, 364 S.W.3d at 825 (rescission requires "a mutual restoration *and accounting*" (emphasis added)).

## I.     Deceptive Trade Practices Act

In their eleventh issue, Carl "Stacey" Neese, James Neese, David Neese, Jennifer Hughes, and Mitzi Renfroe (the "DTPA appellants") argue that the trial court erred by dismissing their claims under the DTPA.[11]  *See* TEX. BUS. & COM. CODE ANN. § 17.50(a)(1), (3) (West 2011).

Appellees sought dismissal of these claims because: (i) the Clients had no damages, and (ii) the transactions in question involved consideration exceeding $500,000, making the DTPA inapplicable under § 17.49(g).   On appeal, appellees attempt to assert additional grounds supporting summary judgment on the DTPA claims, but we cannot consider those new arguments.  *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993) ("A motion [for summary judgment] must stand or fall on the grounds expressly presented in the motion.").

The DTPA appellants argue that appellees did not conclusively prove that the DTPA appellants have no recoverable DTPA damages.  We agree.  The DTPA appellants pleaded for mental-anguish damages, which are potentially recoverable under the DTPA.  *See* TEX. BUS. & COM. CODE ANN. § 17.50(b)(1) (authorizing recovery of mental-anguish damages if the defendant's conduct was committed knowingly); *Carpenter v. De La Cruz*, No. 04-11-00285-CV, 2012 WL 3025842, at *3 (Tex. App.—San Antonio July 25, 2012, no pet.) (mem. op.) (affirming award of mental-anguish damages under the DTPA).  On their traditional motion for summary judgment, appellees bore the burden of conclusively negating the existence of damages.  *See Shaun T. Mian Corp. v. Hewlett-Packard Co.*, 237 S.W.3d 851, 868 (Tex. App.—Dallas 2007, pet. denied) (stating that movant's "burden on a traditional motion for summary judgment is to negate an essential element of [claimant's] cause of action as a matter of law").

---

[11] Appellant Hooper and the minor children of James Robert Neese did not assert a DTPA claim in the live petition.

Appellees did not carry that burden. Summary judgment thus cannot be sustained on appellees' no-damages ground.

The DTPA appellants also argue that appellees did not conclusively prove the DTPA exception for transactions involving "total consideration by the consumer of more than $500,000." *See* BUS. & COM. § 17.49(g) (West Supp. 2014). Appellees based this ground on averments in the fifth amended petition that appellees received millions of dollars in attorneys' fees based on the transactions. But in the Clients' sixth amended petition—their live pleading at the time of the summary-judgment hearing—appellant Hooper and the minor children of James Robert Neese dropped their DTPA claims, and the remaining appellants specifically averred that "[t]he total consideration paid by each of the DTPA Plaintiffs for the representation was less than $500,000." The text of § 17.49(g) supports the DTPA appellants' argument that the $500,000 cap must be applied on an individual-consumer basis. We conclude that appellees did not conclusively prove the § 17.49(g) exception and that the trial court erred by granting summary judgment on the DTPA claims.

## J.    Suspension and disbarment

In their thirteenth and final issue, the Clients challenge the trial court's dismissal of their request for an order suspending or revoking appellee Lyon's law license pursuant to Texas Government Code § 82.062. Appellees argued that § 82.062 does not create a private cause of action. We agree with appellees.

Section 82.062 provides in pertinent part:

> Any attorney who is guilty of barratry, any fraudulent or dishonorable conduct, or malpractice may be suspended from practice, or the attorney's license may be revoked, by a district court of the county in which the attorney resides or in which the act complained of occurred.

TEX. GOV'T CODE ANN. § 82.062 (West 2013). We find no cases holding that § 82.062 authorizes a private citizen to sue an attorney in district court for license suspension or

–33–

revocation.  *Cf. Merritt v. Davis*, 331 S.W.3d 857, 862–63 (Tex. App.—Dallas 2011, pet. denied) (rejecting for inadequate briefing appellant's request that court of appeals disbar appellee).

The Clients contend that they did not assert § 82.062 as a cause of action but rather raised it so that the court could consider suspension or disbarment as proper responses to Lyon's misconduct.  But they invoked § 82.062 in their live pleading under the general heading "Causes of Action" and requested that the trial court suspend or disbar Lyon under that statute.

Suspension and disbarment proceedings are generally undertaken by the Texas Commission for Lawyer Discipline.  *See, e.g.*, *Bitter v. Comm'n for Lawyer Discipline*, No. 02-12-00197-CV, 2014 WL 1999315 (Tex. App.—Fort Worth May 15, 2014, no pet.) (mem. op.); *Long v. Comm'n for Lawyer Discipline*, No. 14-11-00059-CV, 2012 WL 5333654 (Tex. App.—Houston [14th Dist.] Oct. 30, 2012, no pet.) (mem. op.).  Although § 82.062 states that district courts may suspend or disbar attorneys for various kinds of malfeasance, it does not state who has the right to seek such relief from the courts.

Our sister court has held that an individual attorney may not sue to have another attorney disbarred.  That power rests solely with the state bar.  *State ex rel. Chandler v. Dancer*, 391 S.W.2d 504, 505 (Tex. Civ. App.—Corpus Christi 1965, writ ref'd n.r.e.).  Since *Chandler* was decided, other courts of appeals have recognized the state bar's authority in this area.  *See McGregor v. Clawson*, 506 S.W.2d 922, 928 (Tex. Civ. App.—Waco 1974, no writ) (by adopting State Bar Act, the legislature intended "to provide for a full and comprehensive set of laws to cover completely the practice of law, and regulation of and disciplining of lawyers"); *see also Bradt v. State Bar of Tex.*, 905 S.W.2d 756, 759 (Tex. App.—Houston [14th Dist.] 1995, no writ) (holding that private individual could not bring a claim to remove a judge's name from the roll of attorneys); *Galindo v. State*, 535 S.W.2d 923, 925 (Tex. Civ. App.—Corpus Christi 1976, no writ) ("When misconduct on the part of an attorney is alleged to have occurred, the Grievance

–34–

Committee [of the state bar] has the task to conduct an investigation."). We conclude that there is no private cause of action for suspension or disbarment.

We reject the Clients' thirteenth issue on appeal.

## IV. DISPOSITION

For the foregoing reasons, we reverse the trial court's judgment as to the following claims and remedies: barratry under the original version of Texas Government Code § 82.065, breach of fiduciary duty, rescission, civil conspiracy, DTPA violations, and an accounting. We affirm the remainder of the trial court's judgment, and we remand the case for further proceedings consistent with this opinion.

/Ada Brown/
ADA BROWN
JUSTICE

131597F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

CARL "STACEY" NEESE,
INDIVIDUALLY AND AS NEXT FRIEND
OF L.N., C.N., L.N., AND C.N., JAMES
NEESE, DAVID NEESE, JENNIFER
HUGHES, MITZI RENFROE, AND IRL
HOOPER, Appellants

On Appeal from the 382nd Judicial District
Court, Rockwall County, Texas
Trial Court Cause No. 1-13-61.
Opinion delivered by Justice Brown. Justice
Lang participating.

No. 05-13-01597-CV          V.

TED B. LYON, JR., MARQUETTE W.
WOLF, TED B. LYON & ASSOCIATES,
P.C., AND WILLIAM HEIDELBERG,
Appellees

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part.

We **REVERSE** that portion of the trial court's judgment granting summary judgment as to appellants Carl "Stacey" Neese, Individually and as Next Friend of L.N., C.N., L.N., and C.N., James Neese, David Neese, Jennifer Hughes, Mitzi Renfroe, and Irl Hooper's claims for barratry under the original version of Texas Government Code § 82.065, breach of fiduciary duty, rescission, civil conspiracy, and an accounting. We also **REVERSE** that portion of the trial court's judgment granting summary judgment as to appellants Carl "Stacey" Neese, Individually, James Neese, David Neese, Jennifer Hughes, and Mitzi Renfroe's claims for DTPA violations. In all other respects, we **AFFIRM** the trial court's judgment. We **REMAND** this cause to the trial court for further proceedings consistent with the opinion.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 31st day of July, 2015.