

# Fourth Court of Appeals

## San Antonio, Texas

### OPINION

No. 04-15-00405-CV

David **GILLESPIE** and Michael O'Brien,
Appellants

v.

A.L. **HERNDEN** and Frederick R. Zlotucha,
Appellees

From the 408th Judicial District Court, Bexar County, Texas
Trial Court No. 2013-CI-10278
Honorable Cathleen M. Stryker, Judge Presiding[1]

Opinion by:    Patricia O. Alvarez, Justice

Sitting:       Karen Angelini, Justice
               Marialyn Barnard, Justice
               Patricia O. Alvarez, Justice

Delivered and Filed:  December 14, 2016

AFFIRMED

This appeal involves a dispute between two clients and their two attorneys over a written

contingent fee contract and an oral fee-sharing agreement in an oil and gas case.  In that case, the

attorneys obtained a settlement for the clients.  Then, the clients sued the attorneys; the clients

argued the contingent fee contract was unconscionable and the attorneys should forfeit their fees.

---

[1] The Honorable Larry Noll is the presiding judge of the 408th Judicial District Court.  The Honorable Cathleen M.
Stryker, presiding judge of the 224th Judicial District Court, signed the final judgment.

The trial court denied the clients' traditional motion for summary judgment and granted the attorneys' no-evidence and traditional motions. The clients appeal.

Because the clients did not meet their traditional motion's burden or provide any competent evidence in response to the attorneys' no-evidence motion, we affirm the trial court's order.

## BACKGROUND

The two clients, David Gillespie and Michael O'Brien, signed a contingent fee contract (CFC) with attorney A.L. Hernden, but not with attorney Frederick R. Zlotucha, to handle an oil and gas lease dispute. The written CFC specified that Hernden's fee would be 50% of any recovery and the clients would pay all costs from their portion of any recovery. After the oil and gas case began, Hernden asked Zlotucha to help him with the case, and Hernden informed the clients that Zlotucha would be working on their case. The clients agreed to Zlotucha's assistance, and they met with Zlotucha a number of times including accompanying him as he represented them in court proceedings.

After some discovery, the oil and gas dispute parties mediated and reached a settlement agreement. The oil and gas defendant agreed to pay the clients $40,000.00 and give them a 1% overriding royalty interest (ORRI) in an oil and gas lease. Subsequently, Zlotucha drafted a settlement disbursement agreement which the clients and the attorneys signed. The agreement deducted case expenses of $9,538.22 from the $40,000.00 which left a $30,461.78 remainder. The remainder was divided into four equal amounts, and the two clients and the two attorneys each received $7,615.44. The agreement also equally divided the 1% ORRI into four shares with Gillespie, O'Brien, Hernden, and Zlotucha each receiving a 0.25% ORRI.

Thereafter, the clients sued the attorneys for fraud, breach of contract, breach of fiduciary duty, barratry, and violations of the Deceptive Trade Practices Act. The clients contended that the attorneys violated rules 1.04 and 1.08 of the Texas Disciplinary Rules of Professional Conduct,

and those violations made the CFC unconscionable and the oral fee-sharing agreement unenforceable. *See, e.g.*, TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.04(f), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (West 2013) (Tex. State Bar R. art. X, § 9).

After some discovery, the clients moved for partial summary judgment on breach of fiduciary duty by both Hernden and Zlotucha. The clients argued the CFC is unconscionable and violates Hernden's fiduciary duties to the clients by acquiring a proprietary interest in the cause of action, entering into a business transaction with the clients without complying with Disciplinary Rule 1.08(a), and charging an unreasonable fee. *See id.* Rs. 1.04, 1.08. The clients also argued that Zlotucha breached his fiduciary duties by collecting a contingent fee without a CFC or a written fee-sharing agreement, charging an unreasonable fee, and receiving benefits under an unconscionable CFC. *See id.* R. 1.04(f). The trial court denied the clients' motion.

Subsequently, the attorneys filed traditional and no-evidence motions for summary judgment. In their no-evidence motion, the attorneys specifically identified each of the clients' claims and asserted there was no evidence of one or more of the elements for each claim. In their traditional motion, the attorneys argued the summary judgment evidence conclusively disproves at least one essential element of each of the clients' claims.

In response to the clients' motion for reconsideration of their motion for partial summary judgment, the trial court reconsidered the clients' motion and again denied it. The trial court granted the attorneys' traditional and no-evidence motions.

On appeal, the clients raise two issues: (1) the trial court erred by denying the clients' motion for partial summary judgment and (2) the trial court erred in granting the attorneys' motions for summary judgment and rendering a take-nothing judgment against the clients.

We begin by reciting the applicable standards of review.

**STANDARDS OF REVIEW**

To prevail on a traditional motion for summary judgment, a plaintiff movant must show "there is no genuine issue as to any material fact and the [movant] is entitled to judgment as a matter of law." *See* TEX. R. CIV. P. 166a(c); *accord Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). We take the evidence favoring the nonmovant as true and make every reasonable inference and resolve any doubts in the nonmovant's favor. *Nixon*, 690 S.W.2d at 548–49.

A defendant moving for traditional summary judgment must conclusively disprove at least one essential element of each of the plaintiff's claims. *Elliott-Williams Co. v. Diaz*, 9 S.W.3d 801, 803 (Tex. 1999); *Doe v. Boys Clubs of Greater Dall., Inc.*, 907 S.W.2d 472, 476–77 (Tex. 1995). A defendant's motion asserting there is no evidence of one or more elements of a plaintiff's claims must identify the challenged elements. *See* TEX. R. CIV. P. 166a(i); *N. Tex. Mun. Water Dist. v. Ball*, 466 S.W.3d 314, 320 (Tex. App.—Dallas 2015, no pet.) (quoting *Jose Fuentes Co., Inc. v. Alfaro*, 418 S.W.3d 280, 283 (Tex. App.—Dallas 2013, pet. denied) (en banc)).

We review a no-evidence summary judgment using a legal sufficiency standard. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003). "We review the evidence presented by the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). If there is no evidence of one or more essential elements of a claim, we need not examine the summary judgment evidence under the traditional standard. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004); *BP Am. Prod. Co. v. Zaffirini*, 419 S.W.3d 485, 509 (Tex. App.—San Antonio 2013, pet. denied).

"Whether reviewing a traditional or a no-evidence summary judgment, we accept the non-movant's evidence as true and 'indulge every reasonable inference and resolve any doubts in the non-movant's favor.'" *Strandberg v. Spectrum Office Bldg.*, 293 S.W.3d 736, 738 (Tex. App.—San Antonio 2009, no pet.) (quoting *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004)).

## CIVIL LIABILITY AND THE DISCIPLINARY RULES OF PROFESSIONAL CONDUCT

The clients argue courts may consider Disciplinary Rules violations to determine that a CFC is unconscionable, and an attorney who enters into an unconscionable CFC breaches his fiduciary duty to the client. We briefly address the law for civil liability as it is affected by the Disciplinary Rules.

The preamble to the Disciplinary Rules addresses how the Rules relate to civil liability for lawyers:

> These rules do not undertake to define standards of civil liability of lawyers for professional conduct. Violation of a rule does not give rise to a private cause of action nor does it create any presumption that a legal duty to a client has been breached. . . . Accordingly, nothing in the rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating such a duty.

TEX. DISCIPLINARY RULES OF PROF'L CONDUCT pmbl.; *accord Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494, 503 (Tex. 2015) ("The Disciplinary Rules are not binding as to substantive law regarding attorneys, although they inform that law."); *Joe*, 145 S.W.3d at 158 n.2 ("[W]e note that the Rules do not define standards of civil liability of lawyers for professional conduct.").

Although the Rules "do not define standards of civil liability of lawyers," the Texas Supreme Court and our sister courts have looked to the Rules for guidance in determining whether a specific situation violated the public policies—the client protections—embodied in the Rules.

*See Royston, Rayzor, Vickery, & Williams, LLP*, 467 S.W.3d at 503 ("[P]ublic policy . . . may be informed by the Disciplinary Rules.").

The Texas Supreme Court considered the client protections incorporated in Rule 1.15 to determine that a provision in a contingent fee contract was unconscionable as a matter of law. *See Hoover Slovacek LLP v. Walton*, 206 S.W.3d 557, 563 (Tex. 2006) (concluding the law firm's contingent fee contract's "termination fee provision violates public policy and is unconscionable as a matter of law"). It also applied the requirements in Rules 1.04 and 1.08 to determine additional reasons that a fee agreement provision was unenforceable. *Id.* at 563–64 (noting in a footnote that the disciplinary rules "are persuasive authority outside the context of disciplinary proceedings, and we have applied Rule 1.04 as a rule of decision in disputes concerning attorney's fees").

The Austin Court of Appeals has looked to the policies embedded in the Rules when deciding whether CFCs were enforceable. In *Enochs v. Brown* and *Garza v. Gray & Becker, P.C.*, the Austin court recognized the Government Code and the Rules require a CFC to be written and signed by the attorney and the client. *See Enochs v. Brown*, 872 S.W.2d 312, 317–19 (Tex. App.—Austin 1994, no writ), *disapproved of on other grounds by Roberts v. Williamson*, 111 S.W.3d 113 (Tex. 2003); *Garza v. Gray & Becker, P.C.*, No. 03-02-00136-CV, 2002 WL 31769034, at *8 (Tex. App.—Austin Dec. 12, 2002, pet. denied) (mem. op.). But the Austin court likened the lack of a written, signed agreement to a statute of frauds question; it applied a quasi-estoppel theory and enforced CFCs that did not fully comply with Rule 1.04's and Texas Government Code section 82.065's writing requirements. *See* TEX. GOV'T CODE ANN. § 82.065 (West Supp. 2016); *Enochs*, 872 S.W.2d at 319; *Garza*, 2002 WL 31769034, at *8. And in *In re Estate of Arizola*, this court relied on *Enochs*. *In re Estate of Arizola*, 401 S.W.3d 664, 671–72 (Tex. App.—San Antonio 2013, pet. denied).

The Houston First and Dallas Courts of Appeals have also recognized that a client may avoid the enforcement of a CFC *if* the client instructs the attorney to stop work *before* the attorney has fully or substantially performed under the contract. *See Cobb v. Stern, Miller & Higdon*, 305 S.W.3d 36, 42 (Tex. App.—Houston [1st Dist.] 2009, no pet.) ("A client may void a contingent fee contract that violates section 82.065 by expressing his intent to do so *before* the attorney has fully or substantially performed." (emphasis added)); *Tillery & Tillery v. Zurich Ins. Co.*, 54 S.W.3d 356, 359 (Tex. App.—Dallas 2001, pet. denied) (same).

In sum, the Rules do not create standards of civil liability for attorneys, but courts may examine the Rules to discern the policies and protections embodied in them as an aid in deciding questions of attorney civil liability. *See* TEX. DISCIPLINARY RULES OF PROF'L CONDUCT pmbl.; *Hoover Slovacek*, 206 S.W.3d at 563; *Enochs*, 872 S.W.2d at 317–19; *see also Estate of Arizola*, 401 S.W.3d at 671–72.

## CONTINGENT FEE CONTRACT

Before we address the questions pertaining to the attorneys' civil liability, we first present the contingent fee contracts that lie at the heart of this appeal. It is undisputed that each client signed a CFC with Hernden. The CFCs, for purposes of this appeal, are identical; in this section, we will refer to Gillespie's and O'Brien's CFCs in the singular: the CFC and the client.

The CFC is a two-page, triple-spaced document. The document consists of two paragraphs: the first identifies the oil and gas dispute as the claim for which Hernden will represent the client, and the second contains the complained of terms. The second paragraph is recited in its entirety:

> **THIS IS THEREFORE TO EVIDENCE**: That Client does hereby voluntarily employ the LAW OFFICE OF A. L. HERNDEN, hereinafter called Attorney, to represent Client in the prosecution and adjustment of said claim, cause of action, and in consideration of such services rendered and to be rendered Client hereby sells, transfers and assigns to the said attorney a FIFTY PER CENT (50%) interest, in and to this matter, claim, and any property obtained through such demand, and/or case, and any compromise, settlements, judgment, or recovery of any sort

whatsoever and howsoever acquired relating thereto, that Client may recover or be entitled to by reason of said matter, claim, demand, and/or case. No settlement or compromise to be made without Client's approval and Client agrees not to make any settlement or compromise without the written approval and consent of Attorney. Any expenses incurred by Attorney in this matter shall be deducted from the client[']s portion of the entire recovery, **only in the event** of any recovery. Expenses which attorney may expend or become liable for in the assertion of this matter and/or claim, including but not limited to, all costs of Court, depositions, interrogatories, investigation, photographs, expert and lay witnesses, and case related expenses. If no recovery is made client will not owe any expenses.

We turn now to the clients' first issue—whether the trial court erred when it denied the clients' traditional motion.

## CLIENTS' TRADITIONAL MOTION

The clients moved for summary judgment on their requested declarations that Hernden breached his fiduciary duty to the clients by entering into a CFC that was unconscionable. The clients' burden was to prove unconscionability as a matter of law. *See Nixon*, 690 S.W.2d at 548. If the summary judgment evidence raised a genuine issue of material fact, the clients were not entitled to judgment. *See id.*

### A. Clients' Complaints of Unconscionable CFC

The clients complain the CFC is unconscionable because the fee is unreasonable and the CFC allows Hernden to recover more than the clients.

#### *1. Unreasonable Fee*

The clients argue the summary judgment evidence proves as a matter of law that the CFC is unconscionable as to Hernden because no competent lawyer could believe the fee Hernden obtained was reasonable and, by entering into that CFC, Hernden violated his fiduciary duties to the clients.

In a deposition, Hernden acknowledged he had already received approximately $225,000 under the 0.25% ORRI he received as part of his fee, and he had worked approximately 100 hours

on the case. But the summary judgment evidence also included expert witness affidavits averring that a 50% contingency fee was reasonable under the circumstances including a common practice of a 50% fee, a difficult case, an uncertain legal result, and an uncertain value of any settlement.

Taking the attorneys' expert witness affidavits as true, we conclude they directly contradict the clients' assertions that the CFC was unconscionable due to an unreasonable fee, and we necessarily conclude the affidavits raise genuine issues of material fact. *See id.* at 548–49.

### 2. *Attorney's Fee Exceeds Clients' Recovery*

The clients also argue the CFC is unconscionable as a matter of law because the CFC gives Hernden a greater fee than the clients' recovery. The CFC allows Hernden to recover a greater amount than the clients because it deducts expenses from the clients' portion of any recovery, but the disbursement statement conclusively proves the expenses were shared equally by the clients and Hernden. The Disbursement and Settlement Statement, included in the clients' traditional motion for partial summary judgment, states the cash recovery was $40,000.00, and expenses were $9,538.22. The expenses were deducted from the gross cash recovery leaving a balance of $30,461.78. Hernden's fee (50% of $30,461.78 = $15,230.89) was deducted from the balance, and the remaining cash recovery ($15,230.89) was divided essentially equally between Gillespie and O'Brien. Gillespie received $7,615.45, and O'Brien received one penny less: $7,615.44. The clients' summary judgment evidence also conclusively proves the 1.0% ORRI was split equally among the clients and the attorneys, with each receiving an ORRI of 0.25%.

Because the summary judgment evidence disproves as a matter of law the very facts the clients had the burden to prove as a matter of law, the clients were not entitled to summary judgment on the requested declaration that the CFC was unconscionable based on an unreasonable fee or a recovery greater than the clients' recovery, or that Hernden breached his fiduciary duty to the clients on those bases. *See* TEX. R. CIV. P. 166a(c); *Nixon*, 690 S.W.2d at 548–49.

**B.      Proprietary Interest; Self-Dealing, Improper Benefit; Business Transaction**

The clients contend the summary judgment evidence proves as a matter of law that Hernden violated aspects of Rules 1.04 and 1.08.

*1.      Proprietary Interest*

First, they argue Hernden created an irreconcilable conflict of interest by taking an impermissible proprietary interest in the cause of action. *See* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.08(h) ("A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client, except that the lawyer may . . . contract in a civil case with a client for a contingent fee that is permissible under Rule 1.04.").

A lawyer may not "acquire a proprietary interest in the cause of action or subject matter of litigation" *except* in a civil case where the lawyer uses a CFC that complies with Rule 1.04. *See id.*; *In re Slusser*, 136 S.W.3d 245, 249 (Tex. App.—San Antonio 2004, no pet.) (allowing an attorney "to acquire a lien on the property to secure his contingent fee").

The summary judgment evidence conclusively proves that Gillespie and O'Brien each signed a written CFC with Hernden. *See* TEX. GOV'T CODE ANN. § 82.065 (West Supp. 2016) ("A contingent fee contract for legal services must be in writing and signed by the attorney and client."); *In re Polybutylene Plumbing Litig.*, 23 S.W.3d 428, 436 (Tex. App.—Houston [1st Dist.] 2000, pet. dism'd).  The CFC states the fee the client owes Hernden in the event of a recovery:

> [I]n consideration of such [legal] services rendered and to be rendered Client hereby sells, transfers and assigns to [Hernden] a FIFTY PER CENT (50%) interest, in and to this matter, claim, and any property obtained through such demand, and/or case, and any compromise, settlements, judgment, or recovery of any sort whatsoever and howsoever acquired relating thereto, that Client may recover or be entitled to by reason of said matter, claim, demand, and/or case.

The summary judgment evidence also conclusively proves the CFC provides for a contingent fee of 50% in "any property obtained" in a recovery. The remaining question on whether Hernden took an impermissible proprietary interest is whether the CFC is permissible under Rule 1.04.

>  2.    *Self-Dealing, Improper Benefit*

Rule 1.04(d) provides guidance for a CFC; it states the following:

> A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (e) or other law. A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined. If there is to be a differentiation in the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, the percentage for each shall be stated. The agreement shall state the litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement describing the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination.

TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.04(d); *see Hoover Slovacek LLP v. Walton*, 206 S.W.3d 557, 563 (Tex. 2006). The summary judgment evidence conclusively proves the CFC was in writing, and the CFC "state[d] the method by which the fee [was] to be determined." *See* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.04(d). Further, the lawyers provided the clients with a Disbursement and Settlement Statement. The written statement described the outcome of the matter including the total amount of the cash settlement, the amount of expenses deducted from the recovery, the adjusted cash amount paid to the clients, and the disposition of the 1.0% ORRI included in the recovery. *See id.* The ORRI was allocated as one-half to the lawyers and one-half to the clients; each client and each lawyer received a 0.25% ORRI.

The clients argue Hernden engaged in self-dealing and obtained an improper benefit because he did not explain the potential value of the ORRI to the clients, and thus neither client understood what he was giving up when he signed his CFC. But Rule 1.04(d)'s guidance only

calls for the CFC to "state the method by which the fee is to be determined." *See id.*; *Celmer v. McGarry*, 412 S.W.3d 691, 700 (Tex. App.—Dallas 2013, pet. denied). The Rule's plain language does not require an attorney to explain the monetary value of a contingent fee, and the clients cite no case law to support their assertion to the contrary.

Taking the summary judgment evidence favoring the attorneys as true and making every reasonable inference in the attorneys' favor, we conclude that the clients failed to prove as a matter of law that the CFC and resultant disbursement were instances of self-dealing and bestowed an improper benefit on Hernden. *See* TEX. R. CIV. P. 166a(c); *Nixon*, 690 S.W.2d at 548–49.

*3.     Business Transaction*

The clients also argue they are entitled to judgment as a matter of law on their requested declarations that the CFC is unconscionable and violates the fiduciary duties Hernden owed to the clients because the CFC's terms were not "fair and reasonable to the client," Hernden did not explain the value of the contingent fee, and Hernden did not advise the clients to seek the advice of independent counsel before they signed the CFC. They claim the CFC and Hernden's conduct violated Rule 1.08(a). Rule 1.08(a) states the following:

> A lawyer shall not enter into a business transaction with a client unless:
>
> > (1)     the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed in a manner which can be reasonably understood by the client;
> >
> > (2)     the client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and
> >
> > (3)     the client consents in writing thereto.

TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.08(a).

By its plain language, Rule 1.08(a) applies when a lawyer "enter[s] into a business transaction with a client." *See id.*; *Rosas v. Comm'n for Lawyer Discipline*, 335 S.W.3d 311, 316 (Tex. App.—San Antonio 2010, no pet.). But "the establishment of a lawyer-client relationship is

not a 'business transaction with a client' within the meaning of Rule 1.08(a)." TEX. COMM. ON PROF'L ETHICS, Op. 586, 72 TEX. B.J. 128, 128 (2009). When the clients executed the CFC with Hernden, they contracted with him to provide legal services, *see Rosas*, 335 S.W.3d at 316 ("An attorney-client relationship is a contractual relationship whereby an attorney agrees to render professional services for a client."), they did not enter into a business transaction with him, *see* TEX. COMM. ON PROF'L ETHICS, Op. 586, 72 TEX. B.J. 128, 128 (2009).

There is no evidence that Hernden entered into any other business transaction with the clients, and we conclude Rule 1.08(a) does not apply in this case. *See id.* Thus, the clients' arguments that Hernden breached his fiduciary duty to them because the CFC's terms were not "fair and reasonable to the client," Hernden did not explain the value of the contingent fee, and Hernden did not advise the clients to seek the advice of independent counsel before they signed the CFC are inapt. *See* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.08(a); *Rosas*, 335 S.W.3d at 316.

## C.    Zlotucha Fee Illegal, Unconscionable

The clients argue neither Hernden nor Zlotucha are entitled to attorney's fees from the clients' settlement because the clients did not consent in writing to a fee-sharing agreement before Zlotucha joined in the representation, the settlement disbursement agreement did not comply with Rule 1.08, and Zlotucha had no written CFC with the clients as required by section 82.065 of the Government Code.

### 1.    *No Written CFC with Zlotucha*

Section 82.065 requires a contingent fee agreement to be in writing:

(a) A contingent fee contract for legal services must be in writing and signed by the attorney and client.

TEX. GOV'T CODE ANN. § 82.065(a); *see Celmer*, 412 S.W.3d at 700. Although the statute does not state any consequence or remedy for failure to comply with its requirement, we may look to case law for guidance.

In *Enochs v. Brown* and *Garza v. Gray & Becker, P.C.*, the Austin Court of Appeals recognized that section 82.065 and Rule 1.04(f) require a CFC to be written and signed by the attorney and the client. *See Enochs*, 872 S.W.2d at 317–19; *Garza*, 2002 WL 31769034, at *8. But the Austin court still enforced the CFCs that did not fully comply with the writing requirements. It did so by likening the lack of a written, signed agreement to a statute of frauds question; it applied a quasi-estoppel theory and enforced CFCs that did not fully comply with section 82.065. *See Enochs*, 872 S.W.2d at 319; *Garza*, 2002 WL 31769034, at *8; *see also Estate of Arizola*, 401 S.W.3d at 671–72 (relying on *Enochs*).

Here, the summary judgment evidence establishes the following:

- Gillespie and O'Brien signed CFCs with Hernden;

- Hernden told both clients Zlotucha would assist Hernden in representing the clients;

- both clients knew Zlotucha would share Hernden's fee;

- Zlotucha met with the clients on numerous occasions, including appearing on their behalf (with them present) in court proceedings;

- the clients never instructed Zlotucha to stop representing them; and

- the clients accepted the benefits Zlotucha helped obtain on their behalf.

*See Enochs*, 872 S.W.2d at 319 (refusing to void a contingent fee contract that the client signed but the attorney did not after the attorney performed on the contract); *Garza*, 2002 WL 31769034, at *8 (refusing to allow clients "to challenge the fee agreements *only after* they have accepted the benefits of those agreements").

We conclude the clients received the protections the legislature intended clients to receive under section 82.065. *See* TEX. GOV'T CODE ANN. § 82.065; *Enochs*, 872 S.W.2d at 319; *Garza*, 2002 WL 31769034, at *8; *see also Estate of Arizola*, 401 S.W.3d at 671–72 (relying on *Enochs*).

We turn now to the clients' complaint that there was no signed fee-sharing agreement.

2.      *No Written Fee-Sharing Agreement*

Rule 1.04(f) states requirements for how attorneys who are not in the same firm are to divide a fee.

> (f)  A division or arrangement for division of a fee between lawyers who are not in the same firm may be made only if:
>
> (1) the division is:
>
>   (i)   in proportion to the professional services performed by each lawyer; or
>
>   (ii)  made between lawyers who assume joint responsibility for the representation; and
>
> (2) the client consents in writing to the terms of the arrangement prior to the time of the association or referral proposed, including:
>
>   (i)   the identity of all lawyers or law firms who will participate in the fee-sharing agreement, and
>
>   (ii)  whether fees will be divided based on the proportion of services performed or by lawyers agreeing to assume joint responsibility for the representation, and
>
>   (iii) the share of the fee that each lawyer or law firm will receive or, if the division is based on the proportion of services performed, the basis on which the division will be made; and
>
> (3) the aggregate fee does not violate paragraph (a).

TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.04(f).

It is undisputed that the clients did not consent in writing to a fee-sharing agreement concerning Zlotucha before Zlotucha began representing the clients. *Contra id.* (requiring the client's written consent to a fee sharing agreement); *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 205 (Tex. 2002) ("A fee sharing agreement between lawyers who are not in the same firm violates public policy and is unenforceable unless the client is advised of and consents to the

sharing arrangement."). But the undisputed evidence, including the clients' own depositions, proves the clients knew that Zlotucha would represent them, that Hernden would share his fee with Zlotucha, and the clients agreed to the fee sharing. At a minimum, the summary judgment evidence establishes that both attorneys maintained responsibility for the representation, the clients knew the identity of all the lawyers who participated in the fee-sharing agreement, and the clients knew, not later than when they signed the settlement disbursement agreement, what share of the fee each lawyer received. *See* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.04(f); *Johnson*, 73 S.W.3d at 205.

Having reviewed the summary judgment evidence, we conclude the clients received the protections Rule 1.04(f) seeks to provide; we also conclude that the clients failed to prove as a matter of law that the oral fee-sharing agreement was unconscionable. *See Hoover Slovacek*, 206 S.W.3d at 561; *Enochs*, 872 S.W.2d at 319 (enforcing a CFC that did not comply with Rule 1.04(f)'s and section 82.065's writing requirements); *Garza*, 2002 WL 31769034, at *8.

## D. Barratry

The clients also argue the attorneys engaged in barratry by "entering into the illegal fee-sharing agreement." The clients insist that because they did not have a written CFC or fee-sharing agreement with Zlotucha, his representation of them constitutes barratry.[2] Penal Code section 38.12 proscribes barratry, and it was in effect at the relevant times. The clients argue the attorneys committed violations under sections 38.12(a)(1), (b)(1), and (b)(2). These subsections read as follows:

---

[2] The clients argue the attorneys engaged in barratry under section 82.0651. *See* TEX. GOV'T CODE ANN. § 82.0651 (West Supp. 2016). The clients signed the CFCs in 2009; section 82.0651 became effective on September 1, 2011. *See* Act of May 5, 2011, 82d Leg., R.S., ch. 94, § 4, 2011 Tex. Gen. Laws 534, 535 (amended 2013) (current version at TEX. GOV'T CODE ANN. § 82.0651 (West Supp. 2016)). Section 82.0651 was not yet in effect when the clients signed the CFCs or when Zlotucha began representing them. *See Neese v. Lyon*, 479 S.W.3d 368, 385 (Tex. App.—Dallas 2015, no pet.). Therefore, section 82.0651 does not apply to the CFCs.

(a) A person commits an offense if, with intent to obtain an economic benefit the person:

(1) knowingly institutes a suit or claim that the person has not been authorized to pursue;

. . .

(b) A person commits an offense if the person:

(1) knowingly finances the commission of an offense under Subsection (a);

(2) invests funds the person knows or believes are intended to further the commission of an offense under Subsection (a) . . . .

TEX. PENAL CODE ANN. § 38.12 (West Supp. 2015).

It is undisputed and the summary judgment evidence conclusively proves that the clients signed CFCs with Hernden. Their signatures authorized Hernden to institute a suit or claim on their behalf. *See id.* § 38.12(a)(1). Further, with respect to the alleged illegal fee-sharing agreement, Hernden averred that he asked Zlotucha to assist him with the case, and he told the clients that Zlotucha would be brought into the case. *See Johnson*, 73 S.W.3d at 205 ("A fee sharing agreement between lawyers who are not in the same firm violates public policy and is unenforceable *unless* the client is advised of and consents to the sharing arrangement." (emphasis added)). In their depositions, the clients acknowledge they knew Zlotucha would assist Hernden in handling the case, they willingly consented to Zlotucha's participation in the suit, they attended court proceedings with Zlotucha in which he represented them, and, until after the settlement disbursement agreement was signed, they never instructed Zlotucha to stop representing them. *See id.*

Taking the evidence favoring the attorneys as true, we conclude the clients failed to prove as a matter of law that the attorneys "knowingly institute[d] a suit or claim that the [attorneys had] not been authorized to pursue." *See* TEX. PENAL CODE ANN. § 38.12; TEX. R. CIV. P. 166a(c); *Nixon*, 690 S.W.2d at 548–49.

Having reviewed the summary judgment evidence under the appropriate standard and the law pertaining to each basis in the clients' traditional motion, we conclude the clients failed to prove as a matter of law that the CFC was unconscionable or that Hernden or Zlotucha breached their fiduciary duties to the clients. *See* TEX. R. CIV. P. 166a(c); *Nixon*, 690 S.W.2d at 548–49. Thus, the clients were not entitled to summary judgment on their declarations.

### ATTORNEYS' NO-EVIDENCE AND TRADITIONAL MOTIONS

We turn now to the attorneys' motions for summary judgment. The attorneys filed no-evidence and traditional motions against the clients' claims of breach of fiduciary duty, fraud, negligence, barratry, and DTPA violations. For each of the clients' claims, we address the no-evidence motion first. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004) (recognizing that a no-evidence review should be conducted first); *BP Am. Prod. Co. v. Zaffirini*, 419 S.W.3d 485, 509 (Tex. App.—San Antonio 2013, pet. denied) (same).

### A. Breach of Fiduciary Duty

The clients claim there is some evidence that the attorneys breached their fiduciary duty to the clients by charging an unconscionable fee, "by failing to make full disclosure of material facts to the [clients] regarding the requirements of a written employment contract and the settlement of the case, by engaging in self-dealing, and by failing to account to the [clients]." The attorneys allege there is no evidence that they breached their fiduciary duties to the clients. It is undisputed that the clients signed CFCs with Hernden, and the CFCs were part of the summary judgment evidence.

#### 1. *Unconscionable CFC*

The clients argue there is some evidence of the attorneys' alleged breach of fiduciary duty because the CFC is unconscionable as a matter of law because the CFC gives Hernden a greater fee than the clients' recovery. But the disbursement statement conclusively proves the expenses

were shared equally by the clients and the attorneys, and under the settlement disbursement agreement, the attorneys did not and will not receive a fee greater than the clients' recovery. Nevertheless, the clients point to their expert witness's opinion that "a 50% contingency fee was excessive and unreasonable under the circumstances" as some evidence of an unconscionable CFC.

Because the clients were the nonmovants for the attorneys' no-evidence motion, we take the clients' evidence as true if it is competent evidence. *See Ryland Grp., Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996); *Nixon*, 690 S.W.2d at 548–49. To be competent evidence, an expert's opinion must offer a factual basis that actually supports the opinion. *See Hous. Unlimited, Inc. Metal Processing v. Mel Acres Ranch*, 443 S.W.3d 820, 829 (Tex. 2014). If the expert offers "little more than his credentials and a subjective opinion," *see Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 712 (Tex. 1997), his opinion is not competent summary judgment evidence, *see Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 726 (Tex. 1998); *see also City of Keller*, 168 S.W.3d at 813 ("[A]n appellate court conducting a no-evidence review cannot consider only an expert's bare opinion, but must also consider contrary evidence showing it has no scientific basis.").

Here, the clients' expert opined that "50% contingency fee contracts are seen as the absolute maximum allowed and are only rarely justified." To support his opinion, he cited a personal injury attorney's article from an advanced personal injury continuing legal education course. But the clients' expert did not opine that such a fee was never justified or offer any supporting evidence to show how a maximum contingent fee in a personal injury suit was applicable to a CFC for an oil and gas case in general or to the clients' oil and gas case in particular. *Contra Hous. Unlimited*, 443 S.W.3d at 829 (requiring an expert opinion to provide a basis that actually supports the expert's conclusion). The expert did not provide a factual basis to show how

he concluded that "this litigation was a fairly typical case," or that the "evidence was fairly straightforward." *Contra id.* Instead, he merely stated that the case contained no "arcane regulatory or public policy issues" or any "complex scientific or medical issues."

The client's expert stated what attributes the clients' oil and gas case did *not* have, but that opinion provides no basis to establish that any attributes the case actually has are not complex. *See Gammill*, 972 S.W.2d at 726 (analytical gap). Further, the clients' expert did not explain how his conclusion—that a fee of *greater* than 50% was unreasonable—applied to the reasonableness of the CFC's 50% fee. *See id.*

For these reasons, we conclude there was too great an analytical gap between the evidence and the expert's opinion; the clients' expert witness's opinion on unconscionability of the CFC and fee was not competent evidence. *See id.* Thus, there was no competent summary judgment evidence that the fee was unconscionable. *See City of Keller*, 168 S.W.3d at 813.

### 2. Full Disclosure of Material Facts

The clients also claim there is some evidence of breach of fiduciary duty because the attorneys did not advise the clients that the attorneys were obligated to have a written CFC and a written fee-sharing agreement. The clients extrapolate from *Chappell*'s statement that a fiduciary must "make a full and accurate confession of all his fiduciary activities, transactions, profits, and mistakes" to require the attorneys to teach the clients about the Disciplinary Rules or law that applied to the CFC or the fee-sharing agreement. *See Jackson Law Office, P.C. v. Chappell*, 37 S.W.3d 15, 22 (Tex. App.—Tyler 2000, pet. denied).

But *Chappell*'s attorney's fee facts are readily distinguishable. In *Chappell*, the attorneys had an hourly fee agreement with the client, but the attorneys "were vague about their fee arrangement, and did not reduce the fee agreement to writing." *Id.* The *Chappell* attorneys "failed

to maintain billing records, failed to record services rendered, and failed to provide billing statements to Chappell." *Id.*

Here, unlike *Chappell*, the CFC was written, signed by the clients, and expressly described the fee arrangement; further, the disbursement statement clearly described the fee, the recovery, and the apportioned distribution of the recovery. *See id. Chappell* requires attorneys to comply with the applicable laws, but we conclude *Chappell* did not create any duty for the attorneys to advise the clients about the Disciplinary Rules or Government Code sections that govern attorney-client contingent fee contracts or fee-sharing agreements. In this case, the existence of signed, written CFCs is undisputed, and the CFCs describe the scope of work and how the attorney's fee is determined. *See* TEX. GOV'T CODE ANN. § 82.065 (contingent fee contract requirements); TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.04(d) (same). The written settlement disbursement agreement described and documented how the recovery was divided, including explaining the moneys recovered and how they were disbursed. *See* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.04(f) (fee-sharing agreement); *Johnson*, 73 S.W.3d at 205.

We conclude there is no evidence that the attorneys breached any duty to the clients to disclose material facts. *See City of Keller*, 168 S.W.3d at 813.

*3. Self-Dealing*

The clients also argue there is some evidence the attorneys breached their fiduciary duties to the clients because the lawyers engaged in self-dealing in the settlement of the clients' oil and gas case. The clients contend the CFCs were self-dealing because the CFCs allow the attorney to deduct case expenses from the clients' share of any recovery. But the settlement disbursement statement conclusively proves the case expenses were shared equally by the clients and the attorneys. Further, bare allegations of misconduct without any supporting evidence are merely conclusory statements and are not competent evidence. *See Mar. Overseas Corp. v. Ellis*, 971

- 21 -

S.W.2d 402, 421 (Tex. 1998) ("[B]are conclusions and assertions unsupported by facts of record . . . are no evidence to support a finding of fact."); *Dolcefino v. Randolph*, 19 S.W.3d 906, 918 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (noting "a conclusory statement is no evidence").

We conclude there is no evidence that the attorneys engaged in self-dealing as a result of the fee specified in the CFC. *See City of Keller*, 168 S.W.3d at 813.

Given the clients' asserted bases for their claims of breach of fiduciary duty against the attorneys, and having reviewed the evidence in the light most favorable to the clients, we nevertheless conclude there was no evidence that the attorneys breached their fiduciary duties to the clients. *See id.*

**B.      Fraud**

In their fraud claims, the clients allege there is some evidence that the attorneys committed common law fraud by representing that the CFC and settlement disbursement statement were valid and enforceable agreements.

Two of the essential elements of a common-law fraud claim are "(1) that a material representation was made [and] (2) that it was false . . . ." *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 222 (Tex. 1992); *accord Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001).

The attorneys argue there is no evidence (1) that they made any materially false representation to the clients or (2) that either the CFC or settlement disbursement statements were not valid, enforceable contracts. It is undisputed that Hernden offered the CFCs to the clients and the clients signed them, both clients signed the Disbursement and Settlement Statement, and both Gillespie and O'Brien received benefits under the statement.

We already addressed the clients' complaints about the agreements' writing deficiencies under Rule 1.04(d) and section 82.065, and determined that the agreements were enforceable. Construing these unambiguous documents as a matter of law, we again conclude the CFCs and the disbursement agreement were valid, enforceable agreements. Thus, there is no evidence that the attorneys made any materially false representation to the clients when they offered the CFCs and the disbursement agreements as valid, enforceable contracts. *See City of Keller*, 168 S.W.3d at 813.

### C.      Negligence, Legal Malpractice

In their fifth amended petition, the clients claim the attorneys "negligently advised [clients] to settle [the clients'] claims for sums far below their worth since they failed in their duty to appraise and determine the value of [the clients'] claims" in the oil and gas dispute. However, in their brief the clients state they "withdrew the legal malpractice and negligence claims," and neither negligence nor legal malpractice was briefed. *See* TEX. R. APP. P. 38.1(i) (requiring adequate briefing); *In re Blankenship*, 392 S.W.3d 249, 259 (Tex. App.—San Antonio 2012, no pet.) (same). We conclude the clients waived any appellate review of any claim for legal malpractice or negligence.

### D.      Barratry

The clients argue there is some evidence of barratry because Government Code section 82.0651 was in effect when the allegedly illegal fee-sharing agreement was executed, and section 82.0651 allows them to void the fee-sharing agreement and settlement disbursement agreement. *See* TEX. GOV'T CODE ANN. § 82.0651. We disagree.

Section 82.0651 allows a client to "bring an action to void a contract for legal services that was procured as a result of conduct violating Section 38.12(a)." *See* TEX. GOV'T CODE ANN. § 82.0651; *Neese v. Lyon*, 479 S.W.3d 368, 385 (Tex. App.—Dallas 2015, no pet.). Here, it is

undisputed that the CFCs were signed before section 82.0651 was in effect and we have already concluded section 82.0651 does not apply to the CFCs. *See* TEX. GOV'T CODE ANN. § 82.0651; *Neese*, 479 S.W.3d at 385.

The clients also argue that section 82.0651 applies to the settlement disbursement agreement, but we conclude it does not. The disbursement agreement was not a contract to procure legal services; it was a statement describing how the recovery proceeds would be distributed and an agreement to those terms. *See Neese*, 479 S.W.3d at 386 (concluding a settlement agreement was not a contract for legal services).

We conclude section 82.0651 does not apply to the fee-sharing agreement or the settlement disbursement agreement. *See id.* We further conclude there is no evidence that the attorneys "knowingly institute[d] a suit or claim that the [attorneys had] not been authorized to pursue." *See* TEX. PENAL CODE ANN. § 38.12 (barratry); TEX. GOV'T CODE ANN. § 82.0651 (civil liability for barratry).

### E.    DTPA Violations

The clients also claim there is some evidence that the attorneys violated multiple sections of the DTPA because the CFC was unconscionable, and the attorneys did not explain to the clients the value of the interest, did not advise the clients to seek independent legal advice before signing the CFC, and did not explain the applicable Disciplinary Rules required the clients' written consent for a fee-sharing agreement. We have already addressed each of these points and concluded there was no evidence of at least one essential element of each overlying claim.

### F.    Traditional Motion

After reviewing all the evidence pertaining to each of the clients' claims in the light most favorable to the clients, we have nevertheless determined the clients failed to produce any competent evidence of at least one essential element of each of their claims. *See Mack Trucks,*

*Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006) (citing *City of Keller*, 168 S.W.3d at 827). Therefore, we need not examine the summary judgment evidence under the traditional standard. *See Ford Motor Co.*, 135 S.W.3d at 600; *BP Am. Prod. Co.*, 419 S.W.3d at 509.

## CONCLUSION

In reviewing the clients' motion for partial summary judgment as a matter of law, we examined the summary judgment evidence in the light most favorable to the attorneys. We conclude the clients failed to meet their burden to prove as a matter of law that the CFCs or Disbursement Settlement Statement agreement were unconscionable or that the attorneys breached their fiduciary duties to the clients. Thus, the trial court did not err when it denied the clients' motion for summary judgment as a matter of law.

In reviewing the attorneys' no-evidence motion for summary judgment, we examined the evidence in the light most favorable to the clients. We conclude the clients failed to produce any evidence of at least one essential element of each of their claims.

Because the clients did not meet their traditional motion's burden or provide any competent evidence on at least one essential element of each of their claims in response to the attorneys' no-evidence motion, we affirm the trial court's order.

Patricia O. Alvarez, Justice