**Reverse and Render; Opinion Filed February 4, 2020**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-18-01340-CV

### COKINOS, BOSIEN & YOUNG, Appellant
### V.
### SHELIA D. MOORE, AS INDEPENDENT EXECUTOR OF THE ESTATE OF EUGENE H. MOORE, Appellee

**On Appeal from the 192nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-16-03317**

## MEMORANDUM OPINION
Before Justices Myers, Osborne, and Nowell
Opinion by Justice Myers

This case concerns a suit to enforce an agreement to share a contingent attorney's fee between lawyers. The law firm Cokinos, Bosien & Young appeals the summary judgment rendered in favor of Sheila D. Moore as independent executor of the estate of Eugene H. Moore on her suit for breach of contract. CB&Y brings four issues on appeal contending (1) the trial court erred by granting appellee's motion for summary judgment and denying CB&Y's motion for summary judgment because the fee-sharing agreement between Eugene Moore and CB&Y is void as against public policy; (2) the trial court erred by granting appellee's motion for summary judgment because the fee-sharing agreement lacked consideration; (3) the trial court erred by awarding appellee twenty percent of the fee CB&Y earned; and (4) the trial court's award of

attorney's fees should be reversed or remanded. We conclude the agreement violated public policy, we reverse the trial court's judgment, and we render judgment that appellee take nothing.

## BACKGROUND

Moore was the general counsel for Ruhrpumpen, Inc. In 2001, Ruhrpumpen was involved in patent litigation with Flowserve Corp., and they entered into a settlement agreement. In 2010, Ruhrpumpen suspected Flowserve was violating the settlement agreement. In July 2010, Ruhrpumpen contacted CB&Y to represent it in litigation with Flowserve. Ruhrpumpen and CB&Y signed a fee agreement providing a forty percent contingency fee to CB&Y if the case was resolved without an appeal and a fifty percent contingency fee if it was appealed. CB&Y filed Ruhrpumpen's suit against Flowserve in November 2010.

On January 25, 2011, Moore sent an e-mail to Gregory Cokinos, one of the lawyers at CB&Y, asking that CB&Y share its contingent fee with him. Cokinos testified in his deposition he told Moore that he would "consider doing that." On February 14, 2011, Moore e-mailed Cokinos stating they needed to resolve the fee-sharing arrangement. In the e-mail, Moore suggested "that a 20% reserve to me would be fair and reasonable (i.e., 8% of the 40% current contingent fee if settled before appeal, or 10% of the 50% contingent fee if tried and appealed)." A month later, on March 11, 2011, Cokinos responded, stating, "We are ok with this arrange[ment], understanding that our cost/expenses will be deducted before we calculate your % recovery. [A]ssuming that's ok. I will confirm by letter. Let me know . . . ." However, Cokinos did not send a letter to Moore setting out the fee-sharing agreement. Eight months later, on November 11, 2013, Moore e-mailed Cokinos and asked Cokinos to prepare what would be necessary for a fee-sharing agreement. However, no written agreement was prepared and no other papers concerning fee sharing were signed.

Moore died in April 2014. On May 15, 2014, the probate lawyer for Moore's estate sent an e-mail to CB&Y asking that the firm honor the fee-sharing agreement with Moore.

The lawsuit between Ruhrpumpen and Flowserve settled in late 2014 or early 2015, and Flowserve paid the settlement amount, $41 million, into CB&Y's trust account. On March 6, 2015, CB&Y and Ruhrpumpen agreed that CB&Y would receive $7,999,200, as its contingent attorney's fee.[1]

Cokinos testified that Ruhrpumpen learned about the fee-sharing agreement in November 2014, seven months after Moore had died. Cokinos testified, "Ruhrpumpen absolutely objected to that and almost fired me over it." On March 9, 2015, Marcelo Elizondo wrote to CB&Y stating Ruhrpumpen did not consent to CB&Y sharing its fee with Moore.

About a year later, on March 24, 2016, appellee brought this suit against CB&Y alleging CB&Y breached a contract to share its fee with Moore and seeking to recover twenty percent of the fee CB&Y received. Both sides moved for summary judgment. The trial court granted appellee's motion for summary judgment and denied CB&Y's. The trial court awarded appellee damages of $1,599,840, which was twenty percent of the fee CB&Y received, and attorney's fees of $125,250 plus additional fees in case of appeal.

## PUBLIC POLICY IN ATTORNEY FEE-SHARING AGREEMENTS

In its first issue, CB&Y contends the trial court erred by granting appellee's motion for summary judgment and denying CB&Y's motion for summary judgment. CB&Y argues that the alleged fee-sharing agreement was not enforceable because it did not comply with Texas Disciplinary Rule of Professional Conduct 1.04(f). *See* TEX. DISCIPLINARY RULES PROF'L

---

[1] The settlement between Flowserve and Ruhrpumpen included Flowserve paying compensation for the trademark and patent violations and Flowserve purchasing assets from Ruhrpumpen. The $41 million settlement payment included both the compensation and the funds for the purchases. The record does not show how much of the $41 million was for compensation and how much was for the purchase of the assets. Cokinos testified that in discussing CB&Y's fee with Ruhrpumpen, he did not include the money for the asset purchases.

–3–

CONDUCT 1.04(f), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (Tex. State Bar R. art. X, § 9).

The standard for reviewing a traditional summary judgment is well established. *See McAfee, Inc. v. Agilysys, Inc.*, 316 S.W.3d 820, 825 (Tex. App.—Dallas 2010, no pet.). The movant has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). The summary judgment record considered by the trial court and reviewed by the appellate court consists of (1) the discovery materials referenced or set forth in the motion for summary judgment or the response, and (2) "the pleadings, admissions, affidavits, stipulations of the parties, and authenticated or certified public records, if any, on file at the time of the hearing, or filed thereafter and before judgment with permission of the court."[2] *Id.* In deciding whether a disputed material fact issue exists precluding summary judgment, evidence favorable to the nonmovant will be taken as true. *In re Estate of Berry*, 280 S.W.3d 478, 480 (Tex. App.—Dallas 2009, no pet.). Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005). We review a summary judgment de novo to determine whether a party's right to prevail is established as a matter of law. *Dickey v. Club Corp.*, 12 S.W.3d 172, 175 (Tex. App.—Dallas 2000, pet. denied).

When, as here, both parties move for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law. *Guynes v. Galveston Cty.*, 861 S.W.2d 861, 862 (Tex. 1993); *Howard v. INA Cty. Mut. Ins. Co.*, 933 S.W.2d 212, 216 (Tex. App.—Dallas 1996, writ denied). Neither party can prevail because of the other's failure to discharge its burden. *Guynes*, 861 S.W.2d at 862; *Howard*, 933 S.W.2d at 216. When both parties move for summary

---

[2] Both sides have cited in their briefs to the deposition of Marcelo Elizondo. That deposition was attached to appellee's amended motion to strike and exclude CB&Y's expert witness. The deposition was not attached to or referenced in the motions for summary judgment or the responses. Therefore, it is not part of the summary judgment record, and we do not consider it in determining whether the trial court erred by granting and denying the motions for summary judgment.

judgment, we consider all the evidence accompanying both motions in determining all questions presented. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000). The reviewing court should render the judgment that the trial court should have rendered. *Id.* When a trial court's order granting summary judgment does not specify the grounds relied upon, the reviewing court must affirm the summary judgment if any of the summary judgment grounds are meritorious. *Id.*

## Rule 1.04(f)

Texas Disciplinary Rule of Professional Conduct 1.04(f) sets out the requirements for agreements for dividing fees between lawyers who are not in the same firm:

> A division or arrangement for division of a fee between lawyers who are not in the same firm may be made only if:
>
> > (1) the division is:
> >
> > > (i) in proportion to the professional services performed by each lawyer; or
> > >
> > > (ii) made between lawyers who assume joint responsibility for the representation; and
> >
> > (2) the client consents in writing to the terms of the arrangement prior to the time of the association or referral proposed, including:
> >
> > > (i) the identity of all lawyers or law firms who will participate in the fee-sharing agreement, and
> > >
> > > (ii) whether fees will be divided based on the proportion of services performed or by lawyers agreeing to assume joint responsibility for the representation, and
> > >
> > > (iii) the share of the fee that each lawyer or law firm will receive or, if the division is based on the proportion of services performed, the basis on which the division will be made; and
> >
> > (3) the aggregate fee does not violate paragraph (a).

PROF'L CONDUCT 1.04(f). Rule 1.04(g) states, as relevant to this case,

> (g) Every agreement that allows a lawyer or law firm to associate other counsel in the representation of a person . . . and that results in such an association with . . . a

–5–

different law firm or a lawyer in such a different firm, shall be confirmed by an arrangement conforming to paragraph (f). Consent by a client or a prospective client without knowledge of the information specified in subparagraph (f)(2) does not constitute a confirmation within the meaning of this rule. *No attorney shall collect or seek to collect fees or expenses in connection with any such agreement that is not confirmed in that way*, except for

(1) the reasonable value of legal services provided to that person; and

(2) the reasonable and necessary expenses actually incurred on behalf of that person.

*Id.* 1.04(g) (emphasis added).

"A fee sharing agreement between lawyers who are not in the same firm violates public policy and is unenforceable unless the client is advised of and consents to the sharing arrangement." *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 205 (Tex. 2002); *see Dickens v. Jason C. Webster, P.C.*, No. 05-17-00423-CV, 2018 WL 6839568, at *12 (Tex. App.—Dallas Dec. 31, 2018, no pet.) (mem. op.) (quoting *Johnson*). CB&Y argues the agreement in this case violates public policy because the client, Ruhrpumpen, did not have notice of the agreement until after Moore had died, and when it did learn of the agreement, it did not consent to it. CB&Y presented evidence of Ruhrpumpen's lack of consent through Cokinos's testimony that Ruhrpumpen did not consent to the fee sharing when Cokinos mentioned it in 2014, and through the letter from Ruhrpumpen's vice president, Marcelo Elizondo, stating that Ruhrpumpen did not agree to CB&Y sharing its contingent fee with Moore.

Appellee argues that Moore, as Ruhrpumpen's general counsel, was Ruhrpumpen's agent and therefore had authority to consent to the fee-sharing agreement on Ruhrpumpen's behalf. We disagree. If Moore was Ruhrpumpen's agent, as appellee asserts, then he was its fiduciary. *Johnson*, 73 S.W.3d at 200. "Unless otherwise agreed, an agent is subject to a duty to his principal to act solely for the benefit of the principal in all matters connected with his agency." *Id.* (quoting RESTATEMENT (SECOND) OF AGENCY § 387 (1958)). "Among the agent's fiduciary duties to the

–6–

principal is the duty to account for profits arising out of the employment . . . ." *Id.* (quoting RESTATEMENT (SECOND) OF AGENCY § 13, cmt. a (1958)). In *Johnson*, the supreme court had "no difficulty in concluding that under common-law agency principles, [a law firm] associate owes a fiduciary duty not to accept a fee or other compensation for referring a matter to a lawyer or law firm other than the associate's employer without the employer's consent." *Id.* at 202. Applying *Johnson* to this situation, we conclude that a company's general counsel owes the company a fiduciary duty not to accept compensation from anyone other than the company for working on a case for the company or for referring the case to a law firm without disclosing that compensation to the company and getting the company's consent. In this case, Moore did not have authority to consent on Ruhrpumpen's behalf to the fee-sharing agreement unless he had disclosed the agreement to the management of Ruhrpumpen other than himself. The record establishes that Moore did not disclose the fee-sharing agreement to Ruhrpumpen's managers. Therefore, Moore did not have authority to consent to the fee-sharing agreement on Ruhrpumpen's behalf. We conclude the fee-sharing agreement violates Disciplinary Rule 1.04(f)(2) because Ruhrpumpen did not "consent[] in writing to the terms of the arrangement prior to the time of the association or referral proposed." TEX. DISCIPLINARY RULES PROF'L CONDUCT 1.04(f)(2). The record shows Ruhrpumpen never consented at any time, either in writing or by other means, to the fee-sharing.

Appellee argues that even if the fee-sharing agreement violates Rule 1.04(f), the trial court did not err by enforcing the contract because the agreement was not void and unenforceable. We disagree.

Appellee asserts *Enochs v. Brown*, 872 S.W.2d 312 (Tex. App.—Austin 1994, no pet.), *disapproved on other grounds by Roberts v. Williamson*, 111 S.W.3d 113 (Tex. 2003), supports enforcement of the fee agreement. In that case, a child was injured by a driver, and the child's mother retained an attorney to bring suit against the driver. *Id.* at 315. The mother signed a

contingent-fee contract, but the attorney did not sign it. The attorney recovered millions of dollars for the child, and the attorney received one-third as his fee. *Id.* at 316. Subsequently, the child's father and the guardian ad litem argued that the attorney's contingent-fee contract with the mother should be declared void because the attorney did not sign it as required by section 82.065 of the Government Code. *See* TEX. GOV'T CODE ANN. § 82.065(a). The trial court found in favor of the attorney, and the court of appeals affirmed. The court of appeals treated section 82.065 as a statute of frauds, observing, "When one party fully performs a contract, the statute of frauds is unavailable to the other who knowingly accepts the benefits and partly performs." *Enochs*, 872 S.W.2d at 319. The court of appeals also observed that "no one is claiming that Brown [the mother], who entered into the contract on Justin's [the child's] behalf did not understand or agree to the contingent fee arrangement that Whitehurst [the attorney] attempts to enforce." *Id.* at 318. *Enochs* is distinguishable. In *Enochs*, there was no issue of fee sharing, and the client was fully aware of the contingent-fee agreement and consented to the contingent fee. In this case, it is not merely the lack of Ruhrpumpen's signature on a fee-sharing agreement that makes the agreement void, it is that Ruhrpumpen did not know of the agreement until after Moore died and that Ruhrpumpen never consented to the fee-sharing even after it learned about the agreement.

Appellee also relies on *Gillespie v. Hernden*, 516 S.W.3d 541 (Tex. App.—San Antonio 2016, pet. denied). In that case, the clients signed a contingent-fee agreement with one lawyer, Hernden, agreeing to pay the lawyer fifty percent of any recovery. *Id.* at 544. Hernden brought in a second lawyer, Zlotucha. *Id.* The clients did not have a written contingent-fee agreement with Zlotucha, and the lawyers did not disclose to the clients that the lawyers intended to share their fees. Nor did the lawyers seek the clients' consent to the fee sharing before Zlotucha began representing them. *Id.* at 552. However, the evidence showed the clients knew and agreed to Zlotucha's representing them, and they knew that Hernden intended to share his fee with Zlotucha.

*Id.* at 551, 552. When the litigation concluded, the clients and the attorneys signed a disbursement agreement stating that Hernden shared his fifty-percent contingency fee equally with Zlotucha. *Id.* at 544. The clients then sued both lawyers, alleging, amongst other things, that Zlotucha was not entitled to share in Hernden's fee because the lawyers did not comply with Rule 1.04(f). The court of appeals concluded the fee sharing was permissible despite the lawyers' failure to comply with the letter of Rule 1.04(f):

> It is undisputed that the clients did not consent in writing to a fee-sharing agreement concerning Zlotucha before Zlotucha began representing the clients. But the undisputed evidence, including the clients' own depositions, proves the clients knew that Zlotucha would represent them, that Hernden would share his fee with Zlotucha, *and the clients agreed to the fee sharing.* At a minimum, the summary judgment evidence establishes that both attorneys maintained responsibility for the representation, the clients knew the identity of all the lawyers who participated in the fee-sharing agreement, and the clients knew, not later than when they signed the settlement disbursement agreement, what share of the fee each lawyer received. Having reviewed the summary judgment evidence, we conclude the clients received the protections Rule 1.04(f) seeks to provide.

*Id.* at 552 (emphasis added). Appellee argues the fee sharing agreement in this case should be enforced because Ruhpumpen, like the clients in *Gillespie*, received the protections of Rule 1.04(f). Ruhrpumpen, however, did not "receive[] the protections Rule 1.04(f) seeks to provide." *Id.* One of those protections is that the client gets to decide what lawyers will share in the fee. The right to consent is also the right not to consent. *See Miller ex rel. Miller v. HCA, Inc.*, 118 S.W.3d 758, 766 (Tex. 2003). This right allows the client to protect itself from potential conflicts of interest and corruption about which it might otherwise have no knowledge. In *Gillespie*, the clients agreed to the fee sharing. *Id.* In this case, Ruhrpumpen chose not to consent to the fee sharing, as was its right. We conclude *Gillespie* is not applicable.[3]

---

[3] Whether or not a fee–sharing agreement would have been enforceable if Ruhrpumpen had been timely notified of its existence and had consented orally to the fee sharing is not before us and we do not address it.

CB&Y cites *Dickens v. Jason S. Webster, P.C.*, No. 05-17-00423-CV, 2018 WL 6839568 (Tex. App.—Dallas Dec. 31, 2018, no pet.) (mem. op.), in support of its argument that the trial court erred by granting appellee's motion for summary judgment and denying CB&Y's. In *Dickens*, a lawyer, Dickens, had an oral contingent-fee agreement with her client in a wrongful death case. Dickens alleged that she and another lawyer, Webster, had an oral agreement that Webster would assume all work on the case and Dickens would split the contingent fee with Webster. Dickens told her client Webster would be taking over the case and that Dickens would be sharing her fee with Webster. The client orally consented. *Id.* at *2. However, the client never consented in writing to the fee sharing, and Dickens and Webster never executed a written fee-sharing agreement. *Id.* at *13. We concluded the fee-sharing agreement "fails to comply with the requirement that the client consent in writing before the association or referral and after being advised of the information required by Rule 1.04(f)(2). Therefore, the oral fee sharing agreement violates public policy and is unenforceable." *Id.* In this case, as in *Dickens*, the client did not consent in writing to any fee-sharing agreement. Moreover, in this case, the client never consented orally to fee sharing.

Appellee argues that declaring the fee-sharing agreement unenforceable unjustly enriches CB&Y. She also argues it would encourage attorneys to agree to a fee-sharing agreement that does not comply with Rule 1.04(f) and then refuse to comply with the agreement when the case settles. That was also the situation in *Dickens*, yet this Court concluded the agreement was unenforceable.

The Texas Disciplinary Rules of Professional Conduct are not traps for the unwary. All lawyers practicing in Texas are presumed to be aware of the Rules. PROF'L CONDUCT 8.04, cmt. 1 ("There are four principal sources of professional obligations for lawyers in Texas: these rules . . . . All lawyers are presumed to know the requirements of these sources."). "A lawyer shall not

. . . violate these rules . . . ." *Id.* 8.04(a)(1). The requirements in Rule 1.04(f) are clear, as is the requirement in Rule 1.04(g) that "no attorney shall collect or seek to collect fees or expenses in connection with any such agreement" to which the client did not consent in accordance with the requirements of Rules 1.04(f) and (g). Although the courts in *Enochs* and *Gillespie* concluded that fee-sharing agreements may be enforceable even when they do not fully comply with Rule 1.04(f), the courts found the clients had consented to the fee sharing in those cases. The supreme court has made clear that "[a] fee sharing agreement between lawyers who are not in the same firm violates public policy and is unenforceable unless the client is advised of and consents to the sharing arrangement." *Johnson*, 73 S.W.3d at 205. Appellee has not cited any authority providing that a fee-sharing agreement may be enforced when the client refuses to consent to the agreement.

Following *Johnson* and *Dickens*, we conclude that any fee sharing-agreement between CB&Y and Moore "violates public policy and is unenforceable." *Id.*; *Dickens*, 2018 WL 6839568, at *12. The trial court erred by granting appellee's motion for summary judgment and denying CB&Y's. We sustain CB&Y's first issue. Having sustained its first issue, we do not address the other issues.

## CONCLUSION

We reverse the trial court's judgment, and we render judgment that appellee take nothing on her claims against CB&Y.

/Lana Myers/
LANA MYERS
JUSTICE

181340F.P05

–11–



# Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

COKINOS, BOSIEN & YOUNG,
Appellant

No. 05-18-01340-CV     V.

SHELIA D. MOORE, AS INDEPENDENT
EXECUTOR OF THE ESTATE OF
EUGENE H. MOORE, Appellee

On Appeal from the 192nd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-16-03317.
Opinion delivered by Justice Myers.
Justices Osborne and Nowell participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and judgment is **RENDERED** that appellee SHELIA D. MOORE, AS INDEPENDENT EXECUTOR OF THE ESTATE OF EUGENE H. MOORE, take nothing on her claims against appellant COKINOS, BOSIEN & YOUNG.

It is **ORDERED** that appellant COKINOS, BOSIEN & YOUNG recover its costs of this appeal from appellee SHELIA D. MOORE, AS INDEPENDENT EXECUTOR OF THE ESTATE OF EUGENE H. MOORE.

Judgment entered this 4th day of February, 2020.