# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-18-00538-CV

---

**Language People, Inc. and Deaf Nation Enterprises, Inc., Appellants**

**v.**

**Joel Barish, Jed Barish, and DeafNation, Inc., Appellees**

---

### FROM THE 126TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-16-000042, THE HONORABLE KARIN CRUMP, JUDGE PRESIDING

---

## CONCURRING AND DISSENTING OPINION

Although I agree with the majority's discussion of the other issues presented on appeal, I disagree with its analysis of the restitution awarded to DeafNation and the Barishes. I would remand for remittitur or a new trial. For that reason, I respectfully dissent.

DeafNation and the Barishes elected to recover restitution for fraud rather than damages for breach of the Agreement. *See Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 345 (Tex. 2011) (describing election of remedies for party prevailing on claims of fraudulent inducement). Language People contends that the district court conflated damages caused by Language People's non-performance of the contract with the restitution available as a remedy for fraud, and I agree. "[R]estitution is a well-established remedy when a party sets aside a voidable contract." *Neese v. Lyon*, 479 S.W.3d 368, 380 (Tex. App.—Dallas 2015, no pet.). The object of restitution is not to provide the benefits afforded by the contract,

but instead to restore "the status quo of the parties prior to entry of the contract." *Id.* Restitution is properly calculated as "the return of the consideration paid, together with such further special damage or expense as may have been reasonably incurred by the party wronged on account of the contract." *See Italian Cowboy Partners*, 341 S.W.3d at 345 (citing *Smith v. National Resort Cmtys., Inc.*, 585 S.W.2d 655, 660 (Tex. 1979)). Stated another way, "if a plaintiff presents legally sufficient evidence on each of the elements of a fraudulent inducement claim," he may recover "any damages suffered as a result of the fraud." *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998).

The jurors determined that "the sum of money" that "would fairly and reasonably compensate Joel Barish, Jed Barish, and/or DeafNation, Inc.," for the fraudulent inducement included:

(a) $287,500.00 for the amount owed to purchase the listed assets;

(b) $5,620.21 loan payments due on DeafNation's [E]xpo vehicle;

(c) $25,600.00 for the lease payments on DeafNation's office;

(d) $52,695.74 for sums that should have been "turned over to [the Barishes] and [DeafNation]";

(e) $111,073.20 for "salaries and health insurance for [the Barishes]";

(f) $25,000.00 for "the unpaid [E]xpo costs"; and

(g) $0.00 for "operating costs."

2

Based on findings (b) through (f),[1] the district court awarded restitution of $156,797.15 to DeafNation and the Barishes after crediting Language People for certain monies it had already remitted to DeafNation.

The evidence does not support the inclusion of some of these losses in a calculation of restitution. DeafNation's loan payments, lease payments, payroll expenses, and Expo costs are obligations that existed before the parties ever negotiated the possible merger. The Barishes testified that they believed Language People would reimburse these expenses under the terms of the fraudulently induced Agreement. But even if the Agreement had never existed at all, DeafNation and the Barishes would still have incurred some of these costs. At no point did the Barishes testify, for example, that they would have sold the Expo vehicle or vacated their office space were it not for the material misrepresentations of Language People. Nor is there any other evidence that the Barishes continued to make those monthly payments in reliance on those misrepresentations. Thus, on this record, the losses listed in findings (b) and (c) were not "incurred on account of" the fraudulent conduct. *Italian Cowboy Partners*, 341 S.W.3d at 345; *compare, e.g., id.* at 346 (holding evidence sufficient due to "detailed expert testimony" regarding "what amount would restore [prevailing party] to its original position"), *with Formosa Plastics*, 960 S.W.2d at 48 (holding evidence insufficient where "these calculations incorporated expected lost profits on a bargain that was never made").

Similarly, with respect to the sum listed in finding (e), DeafNation had provided salaries and other benefits to the Barishes and their employees for years. The Barishes testified that they continued compensating themselves in the same manner and insuring the corporation in

---

[1] DeafNation and the Barishes concede that the $287,500.00 in damages listed as finding (a) is only recoverable under the contract—not as restitution—and the district court did not award that sum.

3

the same way they had before Language People made its misrepresentations. And while the majority holds that the Barishes, to be made whole, must be compensated for five months of work performed for Language People, the jury returned no finding that the Barishes had performed compensable work for that corporation. To the contrary, throughout their testimony, the two Barish brothers complained of their lack of influence with Language People and their uncertainty as to the nature of their respective responsibilities to their ostensible employer. Joel testified that he continued working in the DeafNation offices in Austin, "taking care of the Expos" the same way he always had. And Jed testified that after relocating to California he never assumed the executive-level role he expected to find there. He recounted how his "ideas weren't being recognized" by Language People and how he ultimately—after months with the corporation—emailed Lisa Wrench to ask, as he recalled it, "[A]m I the CEO of the new company?" and "What exactly is my role?" He explained that when he still had not received a response to the email after three days, he decided to resign. On this record, the award of compensation represents a windfall for DeafNation rather than the return to the status quo the law requires in a calculation of restitution. *See Neese*, 479 S.W.3d at 380.

Yet while there is insufficient evidence to support the district court's entire award, the record shows the Barishes and DeafNation are entitled to some of that award. For example, the record supports the award listed in finding (d) for monies that "should have been turned over" to the Barishes and/or DeafNation. Joel Barish testified that DeafNation expanded its international efforts and added certain Expo services in reliance on Language People's statements. Jed Barish testified that he incurred significant expenses by moving to California, where he believed he would receive a six-figure salary from Language People. As evidence of these losses, the Barishes submitted hundreds of pages bank account records and credit card

4

statements reflecting a combination of personal and professional expenses. A reasonable jury could have inferred from these exhibits and the testimony that Language People should have turned over $52,695.74 to compensate for those losses.

The record also supports the award of $25,000 for "unpaid [E]xpo costs"—i.e., the unpaid portion of a sponsorship agreement that Language People had entered into with DeafNation. While on the stand, counsel asked Language People's corporate officer why Language People had refused to honor the sponsorship agreement. The officer responded that the sponsorship no longer made sense because Language People owned and operated the Expos following the merger. A reasonable jury could thus have inferred that, but for the material misrepresentations regarding that corporate merger, Language People would have continued to sponsor the Expos pursuant to the agreement and that Restitution for these losses is necessary to make DeafNation and the Barish brothers whole. *See Italian Cowboy Partners*, 341 S.W.3d at 346; *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005).

Reviewing this record under the applicable standard, I would conclude the district court erred in its calculation of restitution and would condition affirmance on the filing of a remittitur in the district court. *See* Tex. R. App. P. 46.3. For that reason, I respectfully dissent from that part of the majority's analysis and with its disposition of this appeal.

_____

Edward Smith, Justice

Before Chief Justice Rose, Justices Kelly and Smith

Filed: October 9, 2019

5